The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Glenn Douglas GROSS, Defendant–Appellee.

No. 91SA197.

Supreme Court of Colorado, En Banc.

April 20, 1992.
Rehearing Denied May 11, 1992.

Alexander M. Hunter, Dist. Atty., William F. Nagel, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

David F. Vela, State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The People appeal from a judgment of the Boulder County District Court granting the motion of the defendant, Glenn Douglas Gross, to dismiss a charge of possession of a weapon by a previous offender. *See* § 18–12–108, 8B C.R.S. (1986). The court ruled that the statutory definition of the type of weapon on which the charge was based is unconstitutionally vague and overbroad and that the State lacks the police power to proscribe activities included within the statutory prohibition. We conclude that the statute as properly construed is consistent with constitutional requirements, and therefore reverse and remand for further proceedings.

## I.

A summary of the facts will provide useful context for addressing the constitutional issues presented for review.[1] On September 22, 1981, a Wyoming court convicted the defendant of the felony offense of aggravated assault and battery with a deadly weapon. Seven years later, after serving his sentence in the Wyoming State Penitentiary, the defendant came to Colorado, where the events giving rise to the present case transpired.

On the night of November 22, 1990, Boulder police officers observed the defendant driving a motor vehicle and braking in a careless manner. They knew him and believed that his driver's license was suspended. The officers also knew that the defendant had exhibited hostility in prior encounters with Boulder police officers.

The officers stopped the defendant's vehicle, and an officer directed the defendant to get out. Before complying, the defendant turned his back on the officer and reached under the car seat. He withdrew a sixteen-inch screwdriver, which he hid from the officer's view. The officer told the defendant to put his hands where they could be seen and again directed him to step out of the car. The defendant slowly got out of the car, and continued to position himself to block the officer's view of the screwdriver. The officer drew his gun and told the defendant to drop what he was holding. The defendant moved toward the officer, notwithstanding commands to stop, and assumed an offensive posture, staring at the officer and keeping the object in his hand hidden from view. During the course of these events, one of the other officers also drew his gun. Eventually, the defendant ended the standoff by dropping the screwdriver to the ground.

The police officers then took the defendant into custody. During the time when he was in custody, the defendant made threatening statements directed at the officer who had ordered him out of the car and at police officers in general. He also commented that he had thought about jabbing the officer in the face with the screwdriver. Further evidence suggested that on other occasions the defendant had carried the screwdriver on his person as a means of intimidation.

On the basis of the foregoing encounter with police officers, the defendant was charged with possession of a weapon by a person previously convicted of a felony. *See* § 18–12–108, 8B C.R.S. (1986). The charging instrument characterized the weapon as "a knife; namely a screwdriver approximately 16" in total length, capable of inflicting cutting, stabbing or tearing wounds."[2] The defendant moved to dis-

---

1. The facts are derived from transcripts of various pretrial hearings and are not in dispute for the purpose of resolving the constitutional issues before us. No evidence was presented at the hearing on the motion to dismiss.

2. Other charges were also filed against the defendant. The partial record on appeal does not disclose completely the nature, history and disposition of these charges. It does indicate that a jury trial was held and that the defendant was

miss the charge on the basis that the statute on which the charge was based is vague and overbroad, and that the statutory prohibition exceeds the police power of the State. The district court granted the motion. After trial of the other charges, the prosecution brought this appeal, pursuant to section 16–12–102(1), 8A C.R.S. (1986), which requires the prosecution to appeal any decision adjudging any act of the general assembly unconstitutional in a criminal case.[3]

## II.

The statute under which the defendant was charged, section 18–12–108, 8B C.R.S. (1986), provides as follows:

Any person previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit such offenses, under the laws of the United States of America, the state of Colorado, or another state, within the ten years next preceding or within ten years of his release or escape from incarceration, whichever is greater, who possesses, uses, or carries upon his person a firearm or other weapon mentioned in section 18–1–901(3)(h) or sections 18–12–101 to 18–12–106 commits a class 5 felony. A second or subsequent offense under this section is a class 4 felony.

One of the weapons mentioned in section 18–12–101 is a "knife," which is assigned the following definition:

"Knife" means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or *any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds*, but does not include a hunting or fishing knife carried for sports use. The issue that a knife is a hunting or fishing knife must be raised as an affirmative defense.

§ 18–12–101(1)(f), 8B C.R.S. (1986) (emphasis added).

The argument on the motion to dismiss centered on the constitutional sufficiency of the emphasized portion of the definition of "knife." In dismissing the charge, the district court adopted the reasons for invalidity asserted by the defendant in his written motion, as follows:

1. The statute does not further a legitimate governmental purpose and prohibits activity not properly subject to the police power.

2. The statute is vague and indefinite in violation of the requirements of due process of the Colorado and United States Constitutions.

3. The statute is overbroad in violation of the First and Fourteenth Amendments of the Constitution of the United States and Article II, Section 25 of the Constitution of Colorado.

The issues before us therefore are whether the emphasized part of the definition of "knife" is unconstitutionally vague or overbroad and whether the legislature acted within the scope of the police power in prohibiting the possession of such a "knife" by persons previously convicted of certain felonies.[4]

## A.

Preliminarily, we recognize that section 18–12–108 has survived prior constitutional attacks on various grounds. *People v. Tenorio*, 197 Colo. 137, 142, 590 P.2d 952, 956 (1979) (upholding statute against challenges based on unconstitutional delegation of power to define crimes, and equal protection of the laws); *People v. Blue*, 190 Colo. 95, 102, 544 P.2d 385, 390 (1975) (upholding statute against certain vagueness,

convicted of reckless endangerment and sentenced to ninety days in jail.

**3.** We have jurisdiction on direct appeal because the constitutionality of a statute is in question. *See* § 13–4–102(1)(b), 6A C.R.S. (1987).

**4.** The district court orally ruled the statute under which the defendant was charged to be unconstitutional "as applied in this case." The

parties interpret this ruling as a determination that the part of the definition of "knife" as "any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds" is unconstitutional on its face. The comments of the judge and the colloquy between court and counsel that preceded the court's ruling support this construction of the ruling.

overbreadth, and right to bear arms challenges); *see also People v. Marques*, 179 Colo. 86, 87, 498 P.2d 929 (1972) (upholding statute's predecessor against equal protection, and right to bear arms challenges); *People v. Trujillo*, 178 Colo. 147, 150–51, 497 P.2d 1, 2–3 (1972) (upholding statute's predecessor against challenge that it violated equal protection by prohibiting persons convicted of certain felonies, but not all felonies, from carrying concealed weapons). The precise vagueness, overbreadth, and police power issues raised by the defendant in the present case, however, have not previously received our attention. We first address the vagueness challenge. We then consider together the somewhat related contentions that the statute is void for overbreadth and cannot be supported as a valid exercise of the police power.

B.

Familiar principles guide us in addressing a challenge to a statute as unconstitutionally vague in violation of the Due Process Clauses of the United States and Colorado Constitutions. *See* U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25. Although we must closely scrutinize any statute asserted to be impermissibly vague, every statute is presumed to be constitutional. *People v. Schoondermark*, 699 P.2d 411, 415 (Colo.1985). It is the burden of a party attacking a statute to prove unconstitutionality beyond a reasonable doubt. *E.g., People v. Rosburg*, 805 P.2d 432, 439 (Colo.1991); *People v. Revello*, 735 P.2d 487, 489 (Colo.1987).

The essential inquiry in addressing a void for vagueness challenge is whether the statute "forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *People v. Becker*, 759 P.2d 26, 31 (Colo.1988); *accord, e.g., People ex rel. City of Arvada v. Nissen*, 650 P.2d 547, 550 (Colo.1982) (citing *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926)). This requirement of reasonable definiteness serves two important pur-

poses. It provides assurance that a penal statute gives fair warning of proscribed conduct so that persons may guide their actions accordingly. *Regency Servs. Corp. v. Bd. of County Comm'rs*, 819 P.2d 1049, 1055 (Colo.1991); *People v. Batchelor*, 800 P.2d 599, 603 (Colo.1990); *Nissen*, 650 P.2d at 550. It also ensures that statutory standards are sufficiently specific so that police officers, prosecutors, judges, and juries can avoid arbitrary and discriminatory application. *Schoondermark*, 699 P.2d at 415; *Nissen*, 650 P.2d at 550. These two purposes of the reasonable definiteness requirement have long been recognized in a myriad of cases. *E.g., Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *High Gear & Toke Shop v. Beacom*, 689 P.2d 624, 630 (Colo.1984).

Mathematical precision in legislative draftsmanship is not necessary, however, to satisfy due process standards. *People v. Ford*, 773 P.2d 1059, 1067 (Colo. 1989); *Blue*, 190 Colo. at 99, 544 P.2d at 388. Although a statute must be sufficiently specific to give fair warning of proscribed conduct, it also often must be sufficiently general to be capable of application under varied circumstances and during changing times. *Exotic Coins, Inc. v. Beacom*, 699 P.2d 930, 943 (Colo.1985); *Nissen*, 650 P.2d at 550. When a statute is challenged on the ground of vagueness, we must attempt to construe the legislation in a manner that will satisfy constitutional due process requirements, if a reasonable and practical construction of the statute will achieve such a result. *People v. Rostad*, 669 P.2d 126, 127 (Colo.1983).

We conclude that section 18–12–108 is not void for vagueness. The statute sets forth definitions of the kinds of weapons that a previously convicted felon may not possess, use, or carry. In a similar case, we upheld a statute proscribing possession of burglary tools against a vagueness challenge. *People v. Chastain*, 733 P.2d 1206, 1209–10 (Colo.1987). In *Chastain*, the People charged the defendant with a violation of section 18–4–205, 8B C.R.S. (1986), which provided:

A person commits possession of burglary tools if he possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking, and intends to use the thing possessed, or knows that some person intends to use the thing possessed, in the commission of such an offense.

§ 18–4–205(1), 8B C.R.S. (1986). Despite the broad and functional definition of burglary tools, we held that the statute possessed sufficient clarity to apprise a person of reasonable intelligence of the prohibited conduct. *Chastain,* 733 P.2d at 1210.

Section 18–12–108 prohibits certain previous offenders from possessing, using or carrying "a firearm or other weapon" mentioned elsewhere in particular statutes. "Weapon" has a commonly understood meaning, as reflected by its definition in *Webster's Ninth New Collegiate Dictionary* 1335 (1989): "1: an instrument of offensive or defensive combat: something to fight with 2: a means of contending against another." Among the numerous weapons specifically described by reference in section 18–12–108 is a knife. In addition to the commonly understood meaning of "knife," the term is given an additional statutory meaning to include objects that can be used to perform some of the same "weapon" functions as a knife: " 'Knife' means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, *or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds ....*" § 18–12–101(1)(f) (emphasis added).

We believe that persons are able to evaluate whether an object is capable of inflicting cutting, stabbing, or tearing wounds so that it is capable of being used as an instrument of offensive or defensive combat, i.e., a weapon. As we have previously observed, due process does not require mathematical precision in draftsmanship. *E.g., Nissen,* 650 P.2d at 550; *Blue,* 190 Colo. at 99, 544 P.2d at 388. There is a need for some generality in describing weapons that can be wielded as knives. As in the case of objects that can be used as burglary tools, the articles that may be employed as weapons to inflict cutting, stabbing, or tearing wounds are "limited only by [the user's] imagination and ingenuity." *Chastain,* 733 P.2d at 1209.

Additionally, as will be developed later in this opinion, an essential element of the crime of possession of "any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds" by a convicted felon is the intent to use the instrument as a weapon. The presence of such a specific intent element diminishes the susceptibility of a statute to a challenge for vagueness, for in such circumstances " ' "the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." ' " *People v. Czemerynski,* 786 P.2d 1100, 1112 (Colo.1990) (quoting *People v. McBurney,* 750 P.2d 916, 920 (Colo.1988) (in turn, quoting *Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945))).

For the foregoing reasons, we are satisfied that in defining weapons classified as knives, the legislature achieved a constitutionally sufficient balance between the countervailing demands that a statute be sufficiently specific to give fair warning of the proscribed conduct, while remaining sufficiently general to be capable of application under varied circumstances. *Nissen,* 650 P.2d at 550.[5] The challenged statutory language is not unconstitutionally vague.

## C.

■ The defendant's arguments based on constitutional overbreadth and the po-

---

**5.** As we observed in *Chastain:*
> Vagueness "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently

specific to provide fair warning that certain kinds of conduct are prohibited."
733 P.2d at 1209 (quoting *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972)).

lice power are closely related and will be considered together. The defendant contends that the definition of "knife" to extend beyond daggers, dirks, knives, and stilettos and to encompass "any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds" sweeps too broadly. He concedes in his brief that a screwdriver is a tool included within that definition. He argues first that the State has no legitimate interest in preventing the mere possession, use, or carrying of a screwdriver by a previously convicted felon, with the consequence that the statutory prohibition is not within the police power of the State. Second, he suggests that a previously convicted felon has a constitutional right to make a living with a tool commonly used in many trades and occupations and that proscription of possession, use, or carrying a screwdriver infringes that right.[6]

■■■ We have used the term overbreadth to describe both types of constitutional infirmities asserted by the defendant. First, a statute suffers from overbreadth if it threatens the existence of a fundamental right by encompassing protected activities within its prohibition. *Regency Services*, 819 P.2d at 1059; *Becker*, 759 P.2d at 29; *see Chastain*, 733 P.2d at 1210. A heightened level of scrutiny must be employed when fundamental rights are threatened, and a statutory prohibition will survive a challenge on this basis only if the party asserting its validity can establish "that the prohibition is necessary to effectuate very significant governmental objectives and that less drastic alternatives would be unavailing." *Becker*, 759 P.2d at 29. A penal statute is also said to be overbroad if it prohibits activity that is legitimate, in the sense that it cannot be

proscribed by exercise of the State's police power.[7] *People v. Rowerdink*, 756 P.2d 986, 990 (Colo.1988); *People v. Sequin*, 199 Colo. 381, 384–85, 609 P.2d 622, 624–25 (1980); *People v. Garcia*, 197 Colo. 550, 553, 595 P.2d 228, 230 (1979); *City of Lakewood v. Pillow*, 180 Colo. 20, 22–24, 501 P.2d 744, 745–46 (1972). An act is within the State's police power if it is reasonably related to a legitimate governmental interest. *Regency Services*, 819 P.2d at 1060; *Becker*, 759 P.2d at 29; *Garcia*, 197 Colo. at 553, 595 P.2d at 230.

■■■ We need not determine, however, whether mere possession of a screwdriver by a convicted felon is encompassed within the constitutional rights of all persons of "enjoying and defending their lives and liberties," Colo. Const. art II, § 3, or whether the prohibition of the possession of a screwdriver for innocent purposes by such a person is within the scope of the State's police power. This is because the prosecution does not contend that the statute prohibits the possession of a screwdriver for the purposes for which it was designed. The prosecution argues that the statute, when read in context and in light of its purposes, prohibits only the "possession or carrying or using of dangerous instruments as weapons, not as legitimate tools." People's opening brief at 18. We next consider whether the statute can be construed in such a manner.

■■■ The following principles of statutory construction will guide us. A statute should be given the construction that will render it effective in accomplishing the purpose for which it was enacted. *E.g., Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991); *Bloomer v. Bd. of County*

---

6. The defendant predicates this right on article II, § 3, of the Colorado Constitution, which provides:

> All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness.

The defendant expressly grounds his argument on his own alleged right to possess a screwdriver; he does not seek the expanded standing

applicable in overbreadth analysis to assert the rights of others to possess or use other articles having allegedly legitimate uses. *See Regency Servs. v. Bd. of County Comm'rs*, 819 P.2d 1049, 1059 (Colo.1991); *Becker*, 759 P.2d at 29.

7. As noted in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 n. 9, 102 S.Ct. 1186, 1192 n. 9, 71 L.Ed.2d 362 (1982), this is essentially a contention of denial of substantive due process.

*Comm'rs of Boulder County,* 799 P.2d 942, 944 (Colo.1990); *In re Questions Submitted by United States Dist. Court for Dist. of Colo.,* 179 Colo. 270, 275, 499 P.2d 1169, 1171 (1972); *Cross v. People,* 122 Colo. 469, 472, 223 P.2d 202, 203–04 (1950). In determining the scope and effect of a statute, a court must seek out the intent of the legislature in voting for its passage; perhaps the best guide to intent is the declaration of policy which frequently forms the initial part of enactment. *St. Luke's Hosp. v. Industrial Comm'n,* 142 Colo. 28, 32, 349 P.2d 995, 997 (1960); *see Civil Rights Comm'n v. Fire Protection Dist.,* 772 P.2d 70, 78 (Colo.1989).

In a preliminary statement of purposes, the Colorado Criminal Code provides as follows:

> This code shall be construed in such manner as to promote maximum fulfillment of its general purposes, namely:
>
> (a) To define offenses, to define adequately the act and mental state which constitute each offense, *to place limitations upon the condemnation of conduct as criminal when it is without fault,* and to give fair warning to all persons concerning the nature of the conduct prohibited and the penalties authorized upon conviction.

§ 18–1–102(1)(a) (emphasis added). This passage strongly indicates that the legislature did not intend to proscribe conduct ordinarily regarded as without fault in enacting the Colorado Criminal Code.

A fundamental question we must answer in construing section 18–12–108 is the type of mental state required by the statute. The statute is silent on this question. However, the legislature has provided:

> Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such a culpable mental state.

§ 18–1–503(2). Because a crime ordinarily requires the conjunction of an act and a culpable mental state, a court should not construe legislative silence on the element of intent in a criminal statute as an indication that no culpable mental state is required. *United States v. United States Gypsum Co.,* 438 U.S. 422, 436–38, 98 S.Ct. 2864, 2873–74, 57 L.Ed.2d 854 (1978); *Morissette v. United States,* 342 U.S. 246, 250–52, 72 S.Ct. 240, 243–44, 96 L.Ed. 288 (1952); *People v. Moore,* 674 P.2d 354, 358 (Colo.1984); *People v. Bridges,* 620 P.2d 1, 3 (Colo.1980); *People v. Naranjo,* 200 Colo. 1, 5, 612 P.2d 1099, 1102 (1980). Rather, the requisite mental state may be implied from the statute. *United States Gypsum Co.,* 438 U.S. at 437, 98 S.Ct. at 2873–74; *Morissette,* 342 U.S. at 252, 72 S.Ct. at 244; *Moore,* 674 P.2d at 358; *Bridges,* 620 P.2d at 3; *Naranjo,* 200 Colo. at 5, 612 P.2d at 1102.

We have previously held that section 18–12–108 requires a culpable mental state. In *People v. Tenorio,* 197 Colo. 137, 139, 590 P.2d 952, 953 (1979), the People charged the defendant, a prior convicted felon, with possession of a revolver in violation of section 18–12–108. We held: "To convict one of possessing a weapon, the jury must find, not mere possession, but that the defendant 'knowingly' possessed the weapon *and that he understood that the object possessed was a weapon." Id.* at 144, 590 P.2d at 957 (emphasis added). We held that the trial court correctly refused to instruct the jury that the possession must be "intentional." *Id.* at 145, 590 P.2d at 957. Given the intrinsic nature of a revolver, section 18–12–108 did not require a purposeful intent for the revolver to constitute a weapon. According to the statutory definitions, revolvers by their very nature constitute weapons; the only question on which criminal liability turns is whether the defendant knowingly possessed the revolver. *See* §§ 18–12–108 (firearm designated as a weapon) and 18–1–901(3)(h) (firearm defined to include revolver).

A "knife," however, embraces many objects that have innocent and legitimate uses even though they may also be em-

ployed as weapons. A review of the statutory language in question makes this clear. Section 18–12–108 provides that any person convicted of specified felonies

> who possesses, uses, or carries upon his person a firearm or other weapon mentioned in section 18–1–901(3)(h) [defining "firearm"] or sections 18–12–101 to 18–12–106 [describing and defining many weapons, including a "knife"] commits a class 5 felony. . . .

As previously noted, section 18–12–101(1)(f) defines a "knife" in the following way:

> *"Knife" means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length,* or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds, *but does not include a hunting or fishing knife carried for sports use.* The issue that a knife is a hunting or fishing knife must be raised as an affirmative defense.

(Emphasis added.) The legislature specifically focused on the purpose to which a knife is put in defining it as a weapon. A hunting or fishing knife carried for the purpose of sports use does not fall in the category of prohibited weapons.[8] This reflects a legislative intent not to proscribe possession, use, or carrying of objects conventionally described as knives when they are of a type designed for hunting or fishing use and are carried for such an innocent purpose.

As the defendant argues, many objects within the expansive definition of "knife," including tools necessary for pursuit of a trade or business, are designed, possessed, and used for constructive and innocent purposes, but can be "dangerous instrument[s]" if misused. Certainly, as the defendant concedes, a screwdriver is capable of inflicting cutting, stabbing, or tearing wounds. *Tenorio* holds that in order to convict under section 18–12–108 a jury

must find "not mere possession, but that the defendant 'knowingly' possessed the weapon *and that he understood that the object possessed was a weapon." Id.,* 197 Colo. at 144, 590 P.2d at 957 (emphasis added). As applied to the "other dangerous instrument[s]" within the definition of "knife," it follows from *Tenorio* that the criminal offense defined in section 18–12–108 requires as an essential element that the defendant intended to use that instrument as a weapon. Such a use need not be the exclusive use to which the defendant intended to put the object, nor is it necessary that the defendant's intent relate to a particular occasion or a specific victim. All that is required is that one of the uses for which the defendant intended the instrument was to employ it as a weapon.[9]

As so construed, section 18–12–108 is not vulnerable to an overbreadth challenge. A state has a very significant interest in preventing crime. The convicted felons prohibited from carrying dangerous instruments are those who have sustained convictions based on crimes involving violence, potential for violence, or disregard of human life, i.e., "burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit such offenses." The prohibition against such persons possessing, using, or carrying objects capable of inflicting cutting, stabbing, or tearing wounds with the intention to use them as weapons is closely tailored to the goal of minimizing the likelihood of new and violent offenses. No less drastic alternative to prevent these previously convicted felons from using such objects as weapons suggests itself. Accordingly, even if the right to carry a screwdriver in order to pursue a legitimate trade is constitutionally fundamental—an issue we do not decide—section 18–12–108 as construed to include the element of intent to use it as a weapon

8. Notably, the definitions of guns and firearms lack these "purpose" exceptions. *See* § 18–12–101(1)(g), (h), and (i); § 18–1–901(3)(h).

9. This is a form of specific intent. "A person acts 'intentionally' or 'with intent' when his conscious objective is to cause the specific result

proscribed by the statute defining the offense. It is immaterial to the issue of specific intent whether or not the result actually occurred." § 18–1–501(5), 8B C.R.S. (1986). The specific result at issue here is the use of the instrument as a weapon.

does not infringe on such a right. *See, e.g., Becker,* 759 P.2d at 29.

We hold that section 18–12–108 is not unconstitutionally vague or overbroad, and that in enacting the statute the State did not exceed its police power. We reverse that part of the judgment of the district court dismissing the charge of possession of a weapon by a previous offender under section 18–12–108 and remand the case to the district court for reinstatement of that charge and for further proceedings consistent with the views expressed in this opinion.