Lawrence M. ROBERTSON, Jr., M.D.; Sharon Deatherage; Jeffrey Hecht; and David Jewell, d/b/a Scotties Guns & Militaria, Plaintiffs–Appellants,

and

State of Colorado, ex rel. Gale A. Norton, Plaintiff/Intervenor–Appellant,

v.

The CITY AND COUNTY OF DENVER; Ari Zavaras, Chief of Police of the City and County of Denver; and Manuel Martinez, Manager of Safety and Ex–Officio Sheriff of the City and County of Denver, Defendants–Appellees.

No. 98CA0167.

Colorado Court of Appeals, Div. V.

March 18, 1999.

Rehearing Denied April 15, 1999.

and §24–51–1105, C.R.S.1998.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

David B. Kopel, Golden, Colorado; Stephen P. Halbrook, Fairfax, Virginia, for Plaintiffs–Appellants.

Gale A. Norton, Attorney General, Richard A. Westfall, Solicitor .General, Hugo Teufel, Deputy Solicitor General, Denver, Colorado, for Plaintiff/Intervenor–Appellant.

Daniel E. Muse, City Attorney, John L. Stoffel, Jr., Assistant City Attorney, Karen A. Aviles, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge VOGT.

Plaintiffs, Lawrence M. Robertson, Jr., Sharon Deatherage, Jeffrey Hecht, and David Jewell, d/b/a/ Scotties Guns & Militaria, and plaintiff-intervenor, the State of Colorado ex rel. Gale A. Norton (collectively plaintiffs), appeal from the trial court's judgment entered on remand of their declaratory judgment action against defendants, the City and County of Denver, Ari Zavaras, and Manuel Martinez. The judgment determined that a Denver ordinance banning assault weapons was not unconstitutionally vague. We affirm.

The ordinance at issue, Denver Revised Municipal Code § 38–130, was enacted in 1989. In 1990, plaintiffs filed this action challenging its constitutionality. The trial court struck down the entire ordinance as unconstitutional.

On appeal, the supreme court upheld the trial court's determination that one portion of the ordinance, § 38–130(b)(1)(c), was void for vagueness, but reversed the trial court's resolution of plaintiffs' other constitutional challenges. It also determined that the unconstitutionally vague provision was severable from the remainder of the ordinance. The case was remanded to permit the trial court to address plaintiffs' no-longer-moot vagueness challenge to another portion of the ordinance, § 38–130(h), which enumerates specific prohibited assault weapons. *Robertson v. City & County of Denver*, 874 P.2d 325 (Colo. 1994).

On remand, a hearing was held, at which plaintiffs offered expert testimony in support of their challenge. Thereafter, the court entered a written order declaring six subsec-

tions of the ordinance, § 38–130(h)(1)(i), (1)(l), (1)(p), (2)(e), (3)(b), and (3)(c), void for vagueness. It concluded that the balance of § 38–130(h) was not unconstitutionally vague and that the invalid provisions were severable from the remaining portions of § 38–130(h).

## I.

Plaintiffs first contend that the trial court applied the wrong legal standard in ruling on their vagueness challenge. They argue that, because the ordinance affects constitutionally protected rights, the court should have applied a more stringent vagueness test, requiring a greater degree of specificity. We disagree.

■ Like statutes, municipal ordinances are presumed constitutional. Where statutes or ordinances are challenged on the ground of vagueness, a court must attempt to construe the law in a manner that will satisfy constitutional due process requirements, if a reasonable and practical construction of the statute will achieve such a result. *People v. Gross,* 830 P.2d 933 (Colo.1992); *Bell & Pollock, P.C., v. City of Littleton,* 910 P.2d 69 (Colo.App.1995).

■ The basic inquiry in a void-for-vagueness challenge is whether the law forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. The statutory language must be specific enough to give fair warning of the prohibited conduct, yet must be sufficiently general to address the problem under varied circumstances and during changing times. *Robertson v. City & County of Denver, supra.*

■ The level of scrutiny to be used by a court in reviewing a vagueness challenge depends on the nature of the enactment, which is determined by considering four factors: (1) whether the statute is an economic regulation; (2) whether the statute imposes civil or criminal penalties; (3) whether the statute contains a scienter requirement; and (4) whether the statute threatens to inhibit the exercise of constitutionally protected rights. *Parrish v. Lamm,* 758 P.2d 1356 (Colo.1988);

*see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ Less specificity is required when a statute or ordinance is an economic regulation, imposes civil penalties, or contains a scienter requirement. By contrast, when the statute imposes criminal penalties or threatens to inhibit the exercise of constitutionally protected rights, more specificity is required. *See Parrish v. Lamm, supra.*

■ The last of the four factors is the most important. In evaluating the vagueness challenges to the ordinance at issue here, the supreme court observed that when constitutionally protected behavior may be inhibited by a challenged law, a greater degree of specificity is required than when a law does not implicate constitutionally protected rights. *Robertson v. City & County of Denver, supra.*

Here, the ordinance provides for criminal sanctions, does not contain a scienter requirement, and, most significantly, implicates the constitutional right to bear arms. *See Robertson v. City & County of Denver, supra;* Colo. Const. art. II, § 13. Accordingly, we agree with plaintiffs that the ordinance requires greater specificity to withstand a vagueness challenge.

However, we do not agree with plaintiffs' contention that the trial court failed to apply this test. In its order, the court set forth *Robertson*'s statement of the legal standard for determining a void-for-vagueness challenge, including the requirement of greater specificity when constitutionally protected rights are implicated. We do not read the balance of the court's lengthy and detailed order as demonstrating that it disregarded the requirement of specificity or otherwise applied the wrong legal standard in resolving plaintiffs' challenge.

■ On appeal, plaintiffs also argue that the court applied the wrong standard by requiring them to prove the ordinance vague "beyond a reasonable doubt." Because this argument was not made in the trial court, we

do not address it here. *See Estate of Stevenson v. Hollywood Bar & Café, Inc.*, 832 P.2d 718 (Colo.1992)(arguments never presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal). We note, however, that the trial court did not suggest anywhere in its order that it would have reached a different result if it had held plaintiffs to a lesser burden of proof than beyond a reasonable doubt.

## II.

Plaintiffs next challenge the substance of the trial court's rulings regarding specified subsections of § 38–130(h). We find no error in the challenged rulings.

Initially, we note that defendants state in their brief on appeal that plaintiffs are making a facial, rather than an "as applied," challenge to the ordinance and must accordingly show that the ordinance is impermissibly vague in all its applications. However, the trial court rejected this argument when it ruled that a challenge to § 38–130(h) was available "based on plaintiff David Jewell's testimony ... that he no longer stocks or sells any firearms that remotely resemble any firearms listed in the ordinance." Because defendants have not challenged that ruling and have themselves addressed the specific subsections raised by plaintiffs, we review plaintiffs' contentions without addressing whether a pre-enforcement facial challenge to the ordinance would warrant the type of analysis engaged in by the trial court here.

## A.

■ The parties stipulated that the only issue regarding certain weapons listed in § 38–130(h) was whether the listings should be read as prohibiting not only fully automatic firearms, but also other, similar-appearing semiautomatic firearms manufactured by the same company. The weapons and subsections to which this stipulation applied were:

| | |
|---|---|
| Action Arms Israel Military Industries UZI and Galil | § 38–130(h)(1)(b) |
| Beretta AR–70 (SC–70) | § 38–130(h)(1)(c) |
| Colt AR–15 and CAR–15 | § 38–130(h)(1)(e) |
| Daewoo K–1, K–2, Max 1 and Max 2 | § 38–130(h)(1)(f) |
| FAMAS MAS 223 | § 38–130(h)(1)(h) |
| Fabrique Nationale FN/FAL, FN/LAR, and FNC | § 38–130(h)(1)(g) |
| Steyr Aug | § 38–130(h)(1)(o) |
| MAC–10 and MAC–11 | § 38–130(h)(2)(c) & (1)(j) |

Plaintiffs contend that the trial court erred in ruling that these provisions could be read as prohibiting semiautomatic firearms without rendering the ordinance void for vagueness. We do not agree.

As a threshold matter, we reject plaintiffs' contention that the supreme court resolved this issue in their favor in *Robertson*. The language from that opinion cited by plaintiffs ("This conclusion of the trial court obviated the need to address plaintiffs' claim that § 38–130(h) is unconstitutionally vague because over half the weapons listed in that section are either not semiautomatics or do not exist" *Robertson v. City & County of Denver, supra* (fn.19)) simply restated plaintiffs' formulation of the issue to be addressed on remand. By repeating plaintiffs' characterization of the issue, the supreme court neither decided the issue nor, as plaintiffs contend, "presumed" that any listings that are not semiautomatics are vague.

In rejecting plaintiffs' argument on this issue, the trial court stated:

The court concludes that these sections of [§ 38–130(h) ] prohibit both the automatic and semiautomatic firearms. The inquiry herein is whether the firearms listed in these sections are so vague that persons of ordinary intelligence must necessarily guess as to their meaning. The court concludes that they require no guess-

work because the listed names include both the automatic and semiautomatic firearms.

A person may have to determine whether the firearm has or lacks an additional descriptor in order to identify it as automatic or semiautomatic. Nevertheless, this determination has no impact on the fact that [the] listing preceding the descriptor is prohibited by the ordinance. As such, this issue creates no confusion about [§ 38–130(h) ]'s proscription of both.

Evidence presented at the hearing supported the trial court's ruling. As to some of the challenged designations, plaintiffs' expert conceded on cross-examination that the listed name included semiautomatic versions. As to others, he conceded that semiautomatic models "might" exist, or, at a minimum, that he could not say whether the listed weapons were available in a semiautomatic version. Further, the definitional sections of the ordinance make it clear that the ordinance applies to semiautomatic weapons, thereby lessening the likelihood that the public would be confused as to whether semiautomatic versions of the listed weapons were proscribed.

We reject plaintiffs' argument that this ruling amounted to a "reenactment" of § 38–130(h)(5), a portion of the ordinance previously struck down as vague.

Section 38–130(h)(5) defined "assault weapon" to include firearms "manufactured or sold by another company under a licensing agreement to manufacture or sell the identical or nearly identical firearms as those listed in subdivision (1), (2), (3) or ... (4)." In an earlier order, which was not challenged by defendants in their initial appeal to the supreme court, the trial court had held that this provision was vague because it would require purchasers to have knowledge concerning the design history of the weapons and concerning licensing agreements between companies.

Here, by contrast, testimony at the hearing indicated that ordinary gun purchasers and sellers would be able to determine whether semiautomatic versions of the weapons at issue here were prohibited without requiring recourse to "design history," licensing agreements, or the like.

Finally, we note that federal gun control statutes define as "semiautomatic assault weapons" many of the firearms challenged by plaintiffs here. *See* 18 U.S.C. § 921(a)(30)(A)(1994)("the term 'semiautomatic assault weapon' means ... any of the firearms, or copies or duplicates of the firearms in any caliber, known as ... Action Arms Israeli Military Industries UZI ⸱and Galil ... Beretta Ar70 (SC–70) ... Colt AR–15 ... Fabrique National FN/FAL, FN/LAR, and FNC ... Steyr AUG"). Our research has uncovered no vagueness challenge to this definition.

We conclude that these subsections of the ordinance are not unconstitutionally vague when construed to include semiautomatic weapons.

### B.

▮▮▮ Plaintiffs also contend that several subsections of § 38–130(h) are vague because the weapon names listed there either do not correspond to the engraved identifiers on actual firearms or refer to firearms that are non-existent. We are not persuaded.

Plaintiffs assert that, under *Robertson,* "one must be able to ascertain readily whether a firearm is unlawful without researching unknown publications and by examination of the firearm itself which one can do only if the firearm is engraved with a make and model name in exactly the same words as used in the ordinance." We do not read *Robertson* as so requiring.

In *Robertson,* the trial court had ruled that § 38–130(b)(1)(c), which defines the types of semiautomatic pistols that constitute assault weapons, was vague because it required people to "learn not only what guns their pistol was designed from, but also ... the design history of the ancestor guns." Upholding that ruling, the supreme court rejected defendants' argument that there were publications available which provided all the information needed to determine whether a pistol was an assault pistol. It stated: "[W]e are

not persuaded that simply because publications exist which contain the information needed to establish the design history of a pistol, that this saves section 38–130(b)(1)(c) from being vague." *Robertson v. City and County of Denver, supra,* 874 P.2d at 334.

Contrary to plaintiffs' contention, we do not read that statement as precluding *any* reliance on information beyond that ascertainable from an examination of the firearm itself.

Here, as to certain challenged listings, the trial court found that variations between the listed weapon names and the specific engravings on the weapons were not fatal because documents accompanying the firearms identified them by the name listed in the ordinance. In our view, this was not the sort of "reliance on unknown publications" which the supreme court found impermissible in *Robertson.*

These findings were based on the testimony of plaintiffs' weapons expert. He testified that, as to the listing for "SKS with detachable magazine" (§ 38–130(h)(1)(k)), weapons not bearing the "SKS" stamp were identified as SKS firearms in the documents that went with the weapons when they came into the country and when they were sold. Similarly, the expert testified that although the name "Avtomat Kalashnikov" (§ 38–130(h)(1)(a)) was not stamped on any firearms, that designation was found "in all sorts of documentation referring to the gun, the service manual, the maintenance manual, supply documents, and things like this."

As to other weapons challenged on the basis that the listed names did not correspond to an engraved identifier, the court noted that plaintiffs' expert had not testified that the absence of such an identifier would confuse anyone or prevent anyone from recognizing that a particular firearm was encompassed within the name listed in the ordinance. Thus, it was not shown that persons of ordinary intelligence would "necessarily have to guess" as to the meaning of these challenged listings. *See People v. Gross, supra.*

In light of this testimony, it was not error to conclude that plaintiffs had failed to establish that the absence of specific identifiers, or the lack of references to the listed names on the firearms themselves, rendered the ordinance vague.

As to the weapons claimed by plaintiffs to be non-existent, plaintiffs' expert either conceded that the named firearm existed, conceded that one might be available for sale even though he had personally never seen one, or otherwise equivocated as to their existence. Again, it was not error to conclude, based on this testimony, that plaintiffs had failed to establish that § 38–130(h) was unconstitutionally vague because it referred to weapons that did not exist.

### III.

■ Finally, plaintiffs contend that the court erred in ruling that the invalid subsections of § 38–130(h) were severable from the remaining provisions and, accordingly, sustaining the remainder of the ordinance. Again, we disagree.

■ As a general rule, if a statute or ordinance is constitutional in one part and unconstitutional in another, the constitutional provision may be sustained and the unconstitutional stricken. Whether unconstitutional provisions are excised from an otherwise sound law depends on two factors: (1) the autonomy of the portions remaining after the defective provisions have been deleted, and (2) the intent of the enacting legislative body. *Robertson v. City & County of Denver, supra.*

In *Robertson,* the supreme court concluded that § 38–130(b)(1)(c), which had been ruled void for vagueness, was severable from the remaining portions of the ordinance at issue here. It noted that the only consequence of finding that provision vague was that the reach of the ordinance would be slightly narrower than as enacted. As to legislative intent, the court pointed out that there was no evidence that Denver would *not* have passed the ordinance had it known that § 38–130(b)(1)(c) was unconstitutional. Finally, it concluded that Denver's intention to allow for severability was clearly set forth in the section of its municipal code declaring that the code provisions were severable.

*Robertson* is dispositive of the severability issue in this case. Here, the subsections of § 38–130(h) which the trial court found unconstitutional proscribed certain specified weapons. Although striking these provisions again narrowed the reach of the ordinance, the other subsections of § 38–130(h) retained their full force and effect and thus were "autonomous." Further, plaintiffs presented no evidence of legislative intent that would indicate that Denver would not have passed the ordinance had it known that certain subsections of § 38–130(h) were unconstitutional.

Accordingly, the court did not err in determining that the provisions stricken as vague were severable from the remaining provisions of § 38–130(h).

The judgment is affirmed.

DAVIDSON, J., concurs.

BRIGGS, J., specially concurs

Judge BRIGGS specially concurring.

I concur in the analysis and conclusion reached by the majority. I write separately only to note all the parties' confusion over the supposed requirement of "proof beyond a reasonable doubt" that a legislative enactment is unconstitutional. Contrary to the parties' apparent understanding, it is *not* a constitutional standard of review. It is, at most, an ultimate burden of persuasion.

The parties' confusion is but one example of the difficulties engendered by the insistence of our appellate courts in stating that a party must "prove" a legislative enactment unconstitutional "beyond a reasonable doubt." As I have previously discussed, these difficulties are avoided by treating this supreme court dicta as conveying no more than our traditional judicial deference, arising out of the doctrine of separation of powers, to a co-equal branch of government. *See United Air Lines, Inc. v. City & County of Denver,* 973 P.2d 647 (Colo.App.1998)(Briggs, J., concurring).