COLORADO COURT OF APPEALS                          **2017COA82**

Court of Appeals No. 15CA1240
El Paso County District Court No. 14JD739
Honorable G. David Miller, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of L.C.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE VOGT*
Terry and Richman, JJ., concur

Announced June 15, 2017

Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     L.C., a juvenile, appeals the district court judgment adjudicating him a delinquent based on his commission of acts that, if committed by an adult, would constitute the offenses of unlawfully carrying a concealed weapon and violating a protection order. L.C. challenges the constitutionality of the concealed weapon statute and of the protection order, and he contends that the evidence was insufficient to establish that he committed the charged offenses. We are unpersuaded by his contentions and therefore affirm the judgment.

## I. Background

¶ 2     In September 2014, a police officer observed L.C. in a public park after hours. The officer contacted L.C., obtained his name and date of birth, and discovered that L.C. was subject to a protection order. That protection order, entered against L.C. in an unrelated case in 2013, provided, among other things, that L.C. was not to "possess or control a firearm or other weapon."

¶ 3     The officer then asked to search the backpack that L.C. was carrying. L.C. began pulling objects out of the backpack, but avoided one compartment. When the officer looked in that

1

compartment, he found a knife with a five and one-half inch blade inside a sheath.

¶ 4    L.C. was arrested.  The People filed a petition in delinquency, charging L.C. with violation of a protection order, unlawfully carrying a concealed weapon, and trespass.  After a bench trial, the magistrate found L.C. not guilty of trespass but guilty of the other two offenses.  He adjudicated L.C. delinquent and sentenced him to probation.  L.C. petitioned for district court review, arguing that the concealed weapon statute was void for vagueness and that the original protection order was invalid.  The district court denied the petition in a written order, and this appeal followed.

## II. Concealed Weapon Offense

¶ 5    L.C. contends that section 18-12-105, C.R.S. 2016, which defines the offense of unlawfully carrying a concealed weapon, is unconstitutionally vague and overbroad.  We conclude that the statute is not unconstitutionally vague, and we do not reach the merits of his overbreadth argument because he did not raise it in the district court.

¶ 6    Whether a statute is constitutional is an issue that we review de novo.  *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo.

2007).  Statutes are presumed to be constitutional, and a party

challenging a statute's constitutionality has the burden of showing

that the statute is unconstitutional beyond a reasonable doubt.

*People v. Mojica-Simental*, 73 P.3d 15, 18 (Colo. 2003).  If there is

more than one possible interpretation of the statute, we must adopt

the constitutional construction.  *Id.*

A. Vagueness

1. General Legal Principles

¶ 7     To comport with the requirements of due process under the

United States and Colorado Constitutions, statutes must define

criminal offenses "with sufficient definiteness that ordinary people

can understand what conduct is prohibited and in a manner that

does not encourage arbitrary and discriminatory enforcement."

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *accord People v.

Stotz*, 2016 COA 16, ¶ 25.  A statute is unconstitutionally vague if it

"forbids or requires the doing of an act in terms so vague that

persons of ordinary intelligence must necessarily guess as to its

meaning and differ as to its application."  *People v. Gross*, 830 P.2d

933, 937 (Colo. 1992) (quoting *People v. Becker*, 759 P.2d 26, 31

(Colo. 1988)).

3

¶ 8    The requirement that a statute be reasonably definite serves two important purposes: (1) it provides fair warning of proscribed conduct, so that persons may guide their actions accordingly; and (2) it ensures that statutory standards are sufficiently specific so that police officers and other actors in the criminal justice system can avoid arbitrary and discriminatory application.  *Id.*

¶ 9    In assessing whether a statute is reasonably definite, we give words and phrases used in the statute their generally accepted meanings.  *People v. Janousek*, 871 P.2d 1189, 1196 (Colo. 1994).  A statute may be sufficiently definite even if it does not contain precise definitions of every word or phrase constituting an element of the offense.  *People v. Schoondermark*, 699 P.2d 411, 416 (Colo. 1985).

¶ 10   A statute may be challenged as unconstitutionally vague either on its face or as applied to particular conduct.  *Stotz*, ¶ 27.  To establish that a statute is vague on its face, the party challenging it must show that the statute is "incomprehensible in all of its applications."  *People v. Shell*, 148 P.3d 162, 172 (Colo. 2006).  *But see Johnson v. United States*, 576 U.S. __, __, 135 S. Ct. 2551, 2560-61 (2015) ("[A]lthough statements in some of our opinions

4

could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."). To prevail on an as-applied challenge, it must be shown that the statute does not, with sufficient clarity, prohibit the conduct against which it is enforced. *Shell*, 148 P.3d at 172; *Stotz*, ¶ 27.

## 2. L.C.'s Challenge

¶ 11  L.C. was found guilty of violating section 18-12-105(1)(a), which states: "A person commits a class 2 misdemeanor if such person knowingly and unlawfully . . . [c]arries a knife concealed on or about his or her person." As used in section 18-12-105(1)(a), "knife" means "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds, but does not include a hunting or fishing knife carried for sports use." § 18-12-101(1)(f), C.R.S. 2016.

¶ 12  L.C. contends that section 18-12-105 is unconstitutionally vague on its face because, when read together with the statutory definition of "knife," it criminalizes the concealed possession on or

5

about one's person of any knife with a blade of over three and one-half inches (except for hunting and fishing knives carried for sports use), regardless of whether the knife is intended to be used as a weapon. L.C. cites examples of types of cutlery, yard tools, and collectibles that would fall within the statutory definition of knife. He also cites testimony from the arresting officer, who agreed on cross-examination that a shopper carrying a butcher knife out of a Target store in a shopping bag would "by definition" be breaking the law, but would not be arrested because "[w]e have discretion." Thus, L.C. argues, the statute does not give people fair notice of what conduct is prohibited, and it invites arbitrary enforcement.

¶ 13 We disagree. L.C.'s argument overlooks the fact that, for the statute to apply, the person carrying the knife must be doing so "unlawfully." *See People v. Iversen*, 2013 COA 40, ¶ 23 ("[U]nlawfully" is not a term of mental culpability but means simply "in violation of [a certain] law."). L.C. was carrying the concealed knife in his backpack unlawfully because he was doing so in violation of a court order. In contrast, his hypothetical Target shopper, not subject to such an order, was not carrying the concealed knife unlawfully and thus was not violating the concealed

6

weapon statute. Persons of ordinary intelligence would not have to guess as to the applicability of the statute to their own act of carrying a knife, *see Gross*, 830 P.2d at 937, and, regardless of the officer's subjective interpretation here, we perceive no basis for concluding that the statute invites arbitrary or discriminatory enforcement. *Id.*

¶ 14 Finally, we are not persuaded by L.C.'s argument that the statute is nevertheless vague because it lacks a specific intent requirement. L.C. relies on *A.P.E. v. People*, 20 P.3d 1179, 1183-86 (Colo. 2001), in which the supreme court held that, to give effect to the legislature's exclusion of short knives from the statutory definition in section 18-12-101(1)(f), carrying a concealed knife with a blade of less than three and one-half inches would not support a conviction for violating the concealed weapon statute unless the prosecution proved that the defendant intended to use the knife as a weapon. He also cites *Gross*, in which the supreme court rejected a vagueness challenge to the statutory definition of "knife" brought by a defendant who had threatened a police officer with a screwdriver and was subsequently convicted of possession of a weapon by a previous offender, in violation of section 18-12-108,

7

C.R.S. 2016. 830 P.2d at 937-38. In that case, in support of its conclusion that there was no constitutional infirmity in reading the section 18-12-101(1)(f) definition to include a screwdriver, the court noted that section 18-12-108 had previously been construed to include, as an element, that the defendant intended to use the instrument at issue as a weapon. *Id.* at 940.

¶ 15  We do not read either *A.P.E.* or *Gross* as requiring a finding of specific intent where, as here, the instrument at issue — a knife with a five and one-half inch blade — is clearly within the statutory definition of knife. *See id.* at 938. In such circumstances, the statutory requirement that the person be concealing the knife knowingly and "unlawfully" saves section 18-12-105 from being unconstitutionally vague, even without a specific intent requirement.

## B. Overbreadth

¶ 16  L.C. also argues that section 18-12-105 is unconstitutionally overbroad, both facially and as applied to his conduct, because it prohibits activities that cannot reasonably be characterized as unlawful and invades his right under article II, section 13 of the Colorado Constitution to bear arms in defense of his home, person,

8

and property. *See Gross*, 830 P.2d at 939 (statute is overbroad if it prohibits legitimate activity or encompasses protected rights within its prohibition). Because L.C. makes this argument for the first time on appeal, we decline to address its merits.

¶ 17 Appellate courts generally decline to address unpreserved as-applied challenges to the constitutionality of a statute because of the lack of a developed record. *See People v. Patrick*, 772 P.2d 98, 100 (Colo. 1989) ("It is imperative that there be some factual record made by the trial court which states why the evidence . . . causes the statute to be unconstitutional as applied."); *People v. Mountjoy*, 2016 COA 86, ¶ 36; *People v. Torres*, 224 P.3d 268, 273 (Colo. App. 2009); *People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005); *cf. People v. Allman*, 2012 COA 212, ¶ 16 (reviewing merits of unpreserved as-applied vagueness challenge where record was sufficiently developed to permit review of claim).

¶ 18 Here, L.C. cites brief testimony by the arresting officer about L.C.'s conversation with his father after the arrest ("[L.C.] also made the statement that – I don't remember the exact words – but something to the effect of you don't understand what it is when you get in with these people or something of that nature."), and he

argues on appeal that the statement "suggests that he was carrying the knife only for defensive purposes." However, apart from that single ambiguous sentence, there is no evidence whatsoever in the record regarding L.C.'s reason for carrying the knife, and neither the magistrate nor the district court made any factual findings on the issue. In these circumstances, the record is insufficient to permit appellate review of L.C.'s as-applied overbreadth challenge.

¶ 19    As for his facial overbreadth challenge, we note that the supreme court and divisions of this court have exercised their discretion to review unpreserved facial challenges to a statute's constitutionality, but "only where doing so would clearly further judicial economy." *People v. Houser*, 2013 COA 11, ¶ 35 (collecting cases); *see Hinojos-Mendoza*, 169 P.3d at 667 (exercising discretion to review unpreserved facial challenge in light of newly announced United States Supreme Court precedent, where doing so would "promote efficiency and judicial economy"). Here, L.C. does not explain, nor do we discern, how our addressing his facial challenge could promote judicial economy, and we are unaware of any recently announced relevant precedent or any other basis for

suggesting that his overbreadth argument could not have been raised earlier.

¶ 20    Moreover, even if we were to conclude that the unpreserved facial overbreadth challenge was reviewable for plain error, *see Reyna-Abarca v. People*, 2017 CO 15, ¶ 47, we would find no plain error. There was no case law or other authority that should have led the trial court sua sponte to find the statute unconstitutionally overbroad. *See People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (for plain error to apply, error must have been "obvious"); *see also* Colo. Const. art. II, § 13 ("[N]othing herein contained shall be construed to justify the practice of carrying concealed weapons.").

## C. Sufficiency of the Evidence

¶ 21    In addition to his constitutional challenges, L.C. contends — again, for the first time on appeal — that the evidence was insufficient to prove that he carried a concealed knife "on or about his . . . person," as required to sustain a conviction for violating section 18-12-105(1)(a). We disagree.

¶ 22    Due process requires that a conviction be supported by proof beyond a reasonable doubt of every element of the offense. *See In re Winship*, 397 U.S. 358, 364 (1970); *Vega v. People*, 893 P.2d 107,

111 (Colo. 1995). This requirement is met if the evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support the defendant's guilt beyond a reasonable doubt. *See Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005); *People in Interest of T.B.*, 2016 COA 151M, ¶ 19.

¶ 23     Divisions of this court have disagreed on the standard of review of unpreserved sufficiency of the evidence claims. *See T.B.*, ¶¶ 16-19 (discussing cases). We need not decide which standard to apply because we conclude that the evidence was sufficient under any standard.

¶ 24     Where a challenge to the sufficiency of evidence requires that a statute be interpreted, the statute must be interpreted to effectuate the General Assembly's intent. *People v. Griego*, 2015 COA 31, ¶ 27 (*cert. granted* Dec. 7, 2015). To discern that intent, we give common words and phrases their ordinary meanings. *Id.* Clear and unambiguous statutory language will be applied as written. *Id.*

¶ 25     L.C. does not dispute that a knife within the section 18-12-101(1)(f) definition was found concealed in the backpack he was carrying. He argues, however, that because his knife was in a sheath in an interior zippered compartment of the backpack, it was

not readily accessible and thus was not "on or about" his person. In support of his interpretation of the statutory requirement, L.C. relies on *People in Interest of R.J.A.*, 38 Colo. App. 346, 349, 556 P.2d 491, 493 (1976), in which a juvenile sitting in his car with a gun tucked under his seat was held to be carrying the gun on or about his person for purposes of section 18-12-105. In so holding, the division cited cases from other jurisdictions defining "about the person" as "sufficiently close to the person to be readily accessible for immediate use." *Id.*

¶ 26 In considering L.C.'s argument, we first note that section 18-12-105 applies to concealed knives or other weapons carried, not just "on" the person, but "on or about" the person. "About" means "reasonably close to." Merriam-Webster Collegiate Dictionary 4 (11th ed. 2004). Thus, by its plain meaning, "about" necessarily enlarges the area in which a weapon may be concealed, encompassing a space close to, even if not directly on, the person. *See Brown v. United States*, 30 F.2d 474, 475 (D.C. Cir. 1929) (The word "about" is a comprehensive term; and by using "about" rather than simply "on" the person, the statute was intended to reach

13

weapons "concealed in such proximity to the person as to be convenient of access and within reach.").

¶ 27    Courts in other jurisdictions have held that weapons carried in purses, briefcases, or backpacks were being carried "on or about" (or even, depending on the wording of the applicable statute, "on") the person. *See, e.g., De Nardo v. State*, 819 P.2d 903, 905-06 (Alaska Ct. App. 1991) (collecting cases); *People v. Wade*, 369 P.3d 546, 548-50 (Cal. 2016) (holding that a person who carried a gun in his backpack carried the gun "on" his person, and also observing that "the phrase 'on or about' is broader than 'on,' and certainly a firearm in a backpack the person is wearing is on or about the person"); *State in Interest of R.P.*, 150 So. 3d 76, 79 (La. Ct. App. 2014) (evidence that juvenile had handgun concealed in the backpack he was wearing was sufficient to satisfy statutory requirement that gun be "on his person").

¶ 28    Moreover, even if we assume that, as the *R.J.A.* division held, a weapon not carried directly on the person must be "readily accessible for immediate use," 38 Colo. App. at 349, 556 P.2d at 493, we conclude that the evidence, viewed under the standards set forth above, was sufficient to establish that it was. Although L.C.

14

asserts that he would necessarily have had to "shuffle through" the contents of the backpack to get to the knife, the fact that he avoided the compartment containing the knife when the officer confronted him suggests that he knew immediately where the knife was. *See also State v. Molins*, 424 So. 2d 29, 30 (Fla. Dist. Ct. App. 1982) (rejecting argument that firearm inside a zippered gun bag, which was itself inside a larger zippered canvas bag carried by defendant, was too inaccessible to be "on or about" defendant's person for purposes of concealed weapon statute).

### III. Protection Order Violation

¶ 29    L.C. contends that the provision of his protection order stating that he was not to "possess or control a firearm or other weapon" was unconstitutionally vague and overbroad. He also asserts that, because the prosecution failed to prove that he did anything directed at the protected person named in that order, the evidence was insufficient to establish that he violated it. We decline to address the first argument and we reject the second.

### A. Constitutionality of Protection Order

¶ 30    For the first time on appeal, L.C. argues that the no-weapon provision of the protection order was unconstitutionally vague and

15

overbroad because, by failing to define "weapon," it did not give him fair notice of what conduct was prohibited, and it violated his constitutional right to possess weapons for defending his home, person, or property. Applying the principles discussed above regarding unpreserved constitutional arguments, we do not reach the merits of L.C.'s constitutional contentions.

¶ 31     The protection order was entered in an unrelated case. Other than a copy of the order itself, there is no information about that case in the record before us. Thus, we have no way of knowing why the no-weapons provision was included in the order or whether the meaning or purpose of the provision was explained to L.C. Further, neither the magistrate nor the district court in this case made any findings about L.C.'s understanding of the protection order or about why L.C. was carrying the knife. Under these circumstances, addressing the merits of L.C.'s challenges to the no-weapon provision of the protection order would be an exercise in speculation that we decline to undertake.

### B. Evidence of Protection Order Violation

¶ 32     The 2013 protection order that L.C. was found to have violated is set forth on a one-page printed form that identifies L.C. as the

16

juvenile and A.H. as the protected person. It states, as relevant here, that "the [j]uvenile constitutes a credible threat to the life and health of the protected person." The form lists six conditions with which the juvenile may be ordered to comply. Three of the six are checked, including the condition ordering that the juvenile shall not "[h]arass, molest, intimidate, retaliate against, or tamper with" the protected person and the condition that the juvenile "[s]hall not possess or control a firearm or other weapon."

¶ 33    L.C. argued in the district court, as he does on appeal, that he could not be convicted of violating the protection order because, although he had a knife, he did not do anything directed at A.H., the person protected by the order. The magistrate and the district court rejected his argument, as do we.

¶ 34    Although characterized as a sufficiency of the evidence issue, L.C.'s argument also involves construction of the criminal statute defining the offense. We review his contention de novo, applying the standards articulated in Part II.C, *supra.*

¶ 35    Under section 18-6-803.5(1)(a), C.R.S. 2016, a person commits the crime of violation of a protection order if, after having been

17

personally served with, or otherwise knowing the contents of, the order, the person

> [c]ontacts, harasses, injures, intimidates, molests, threatens, or touches the protected person . . . identified in the protection order or enters or remains on premises or comes within a specified distance of the protected person . . . or violates any other provision of the protection order to protect the protected person from imminent danger to life or health, and such conduct is prohibited by the protection order.

¶ 36    L.C. does not dispute that he knew of the protection order and that he possessed a knife.  Instead, he argues that because there was no evidence that his possession of the knife was intended to harm A.H., the protected party, there was insufficient evidence to establish that he committed the offense described in section 18-6-803.5.  The statute, L.C. contends, "requires proof that the conduct was prohibited *and* that it was intended to cause imminent danger to the life or health of AH."

¶ 37    We disagree with L.C.'s interpretation of the statute.  By using the disjunctive "or" in section 18-6-803.5(1)(a) ("contacts . . . the protected person . . . or violates any other provision of the protection order to protect the protected person from imminent danger to life or health"), the General Assembly intended to describe

18

alternative ways of committing the offense of violation of a protective order. *See Quintano v. People*, 105 P.3d 585, 591 (Colo. 2005) (use of disjunctive "or" specifies alternative means of committing the crime). Thus, violation of a protective order does not in every instance require proof that the accused contacted the protected person. Rather, a person may also commit the offense by "violat[ing] any other provision of the protection order to protect the protected person from imminent danger to life or health." § 18-6-803.5(1)(a). Put another way, while the *provision* has to have been intended to protect the protected person, there is no additional requirement that the offender's violation of the provision was itself "intended to cause imminent danger to the life or health" of the protected person, as L.C. argues.

¶ 38 While we have no record that could shed light on the original magistrate's reasons for checking the "no-weapons" condition, we agree with the district court in this case that the restriction on carrying a weapon was "certainly rationally and reasonably related" to the goal of protecting A.H. from any further threat by L.C. to his life or health. Thus, evidence that the protection order contained a provision prohibiting L.C. from possessing a weapon and that L.C.

19

was found in possession of a weapon was sufficient to sustain his conviction for violation of a protection order.

## IV. Conclusion

¶ 39    The judgment is affirmed.

JUDGE TERRY and JUDGE RICHMAN concur.