The PEOPLE of the State of Colorado,
Petitioner–Appellee,

In the Interest of A.P.E., a Child,
Juvenile–Appellant.

No. 98CA0588.

Colorado Court of Appeals,
Div. II.

April 1, 1999.

Certiorari Granted Nov. 8, 1999.

Opinion by Judge PLANK.

A.E., a juvenile, appeals from a judgment adjudicating him a delinquent after a bench trial finding him guilty of committing acts that would, if committed by an adult, constitute possession of an illegal weapon and unlawfully carrying a concealed weapon. We affirm.

Because A.E. was yelling profanities and making obscene gestures at passing cars, a police officer contacted him and conducted a search as authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A.E. informed the officer that he was carrying a concealed "knife" (the weapon) (see photocopy depiction in appendix). The officer examined the weapon, and A.E. was later charged with one count of possession of an illegal weapon in violation of § 18–12–102(4), C.R.S.1998, one count of carrying a concealed weapon in violation of § 18–12–105, C.R.S. 1998, and another count that was later dismissed. The delinquency adjudication at issue here resulted.

## I.

A.E. contends that his conviction for possession of an illegal weapon should be reversed because the lack of a definition of the phrase "metallic knuckles" in the criminal code renders § 18–12–102(4), C.R.S.1998, unconstitutionally vague as applied to him. We disagree.

When a defendant asserts that a criminal statute is unconstitutionally vague because it violates constitutional due process guarantees, we must carefully scrutinize the statute. Nevertheless, we presume the statute to be constitutional unless the defendant proves otherwise beyond a reasonable doubt. *People v. Gross,* 830 P.2d 933 (Colo.1992).

To be unconstitutionally vague, a statute must forbid or require "the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *People v. Becker,* 759 P.2d 26, 31 (Colo.1988).

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jane G. Ebisch, Special Assistant Attorney General, Denver, Colorado, for Petitioner–Appellee.

David F. Vela, Colorado State Public Defender, Daniel G. Katz, Deputy State Public Defender, Denver, Colorado, for Juvenile–Appellant.

The phrase "metallic knuckles" in § 18–12–102(2), C.R.S.1998, is a generalization of the colloquial phrase "brass knuckles" which, as is generally acknowledged, are weapons that are now commonly, despite the name, made from a variety of metals. *Black's Law Dictionary* 188 (6th ed.1990). Therefore, we consider the various definitions of "brass knuckles" in construing the statute.

"Brass knuckles" have been variously defined as a "weapon worn on the hand for the purposes of offense or defense so made that in hitting with the fist considerable damage is inflicted," *Black's Law Dictionary* 188 (6th ed.1990); as a "set of four metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon," *Webster's Third New International Dictionary* 269 (1981); and as "a band of metal with four holes that fits over the upper fingers and is gripped when a fist is made, used as a weapon." *Random House Webster's College Dictionary* 166 (1991).

These definitions, and others commonly in use, convey an unambiguous sense of the nature of metallic knuckles: there must be four metal finger rings or guards attached to a cross piece; the assemblage must be intended to be worn on the hand with the fingers through the rings or guards; and it must be designed and intended for use as a weapon.

We are not persuaded that persons of ordinary intelligence must necessarily guess at the meaning of the phrase "metallic knuckles" as used in the statute prohibiting possession of illegal weapons, nor that they would differ as to the application of that definition to particular weapons. Therefore, we hold that § 18–12–102(4), C.R.S.1998, is neither facially void for vagueness as to its prohibition of possession of metallic knuckles, nor is it unconstitutionally vague as applied to defendant and the particular weapon at issue here.

## II.

A.E. next contends that there was insufficient evidence to support either conviction. We address each contention separately.

When a criminal defendant asserts that the evidence was insufficient to support a conviction, we review the evidence presented in the light most favorable to the prosecution to ascertain whether the trier of fact could conclude that the prosecution proved all elements of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the trier of fact and reweigh the evidence or the credibility of witnesses. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

The trier of fact is entitled to believe all, some, or none of a witness' testimony. *People v. Martinez,* 187 Colo. 413, 531 P.2d 964 (1975).

### A.

We first consider, and reject, A.E.'s contention that the prosecution did not present sufficient evidence to support a conviction for possession of an illegal weapon.

Section 18–4–102(4), C.R.S.1998, prohibits the knowing possession of an "illegal weapon," which is defined in § 18–4–102(2) as "a blackjack, gas gun, metallic knuckles, gravity knife, or switchblade knife."

The trial court, acting as trier of fact, found that:

> The Court finds this is not an ordinary knife. *This is a combination of a metallic knuckles and a blade.* And the Court finds that … it's [sic] primary use … is to inflict cutting, stabbing, or tearing wounds.

A.E. argues that the only testimony as to the nature of the weapon was that of his expert witness, who testified that it was not metallic knuckles. While the expert conceded that the weapon might meet the common definition of metallic knuckles but for the existence of the knife blade, it was his opinion that the presence of the blade would impede the weapon's use as metallic knuckles so as to defeat the definitional requirement that metallic knuckles be intended to augment the force of a punch with the fist.

However, in addition to the expert's testimony, the trial court, as the trier of fact, was also able to examine the weapon.

■ Our review of the evidence, including the weapon itself, in the light most favorable to the prosecution, supports the conclusion of the trial court that the weapon constitutes a combination of metallic knuckles and a knife blade beyond a reasonable doubt. As depicted in the appendix, the weapon is, in essence, a single piece of a heavy grade of metal with finger holes and sharpened points on the front and a plastic or bone piece attached on each side behind the finger holes. As such, it is an illegal weapon pursuant to § 18–12–102, C.R.S.1998, and the evidence was thus sufficient to support A.E.'s conviction.

## B.

Similarly, A.E. contends that the prosecution did not present sufficient evidence to convict him of possession of a concealed weapon. We disagree.

As pertinent here, § 18–12–105(1), C.R.S. 1998, states:

A person commits a class 2 misdemeanor if such person knowingly and unlawfully:

(a) Carries a knife concealed on or about his person. . . .

The word "knife," as used in this section, is defined in § 18–12–101(1)(f), C.R.S.1998, as follows:

'Knife' means any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, *or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds,* but does not include a hunting or fishing knife carried for sports use. The issue that a knife is a hunting or fishing knife must be raised as an affirmative defense. (emphasis added)

A.E. argues that the prosecution failed to prove that the weapon at issue was a knife, as defined in the criminal code, because its blade is less than three and one-half inches in length.

However, the trial court specifically found that:

[The weapon] is included in the definition of a knife. The Court finds it's included as any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds, but does not include a hunting or fishing knife carried for sports use. The Court finds that [the weapon] does not conform with the definition of a knife, [because the blade is] less than three and one-half inches long. However, the Court finds it does come in under the . . . second definition. That second definition is the dangerous instrument one. And that is the . . . definition that applied to objects that are not ordinary knives.

■ A.E.'s expert testified that the weapon was capable of inflicting cutting, stabbing, or tearing wounds, and an examination of the weapon provides obvious support to that testimony. Hence, there is evidentiary support for the trial court's findings, and we therefore conclude that the evidence was sufficient to support A.E.'s conviction for carrying a concealed weapon in violation of § 18–12–105(1)(a), C.R.S.1998.

## C.

■ A.E. also contends that his conviction for possession of a concealed weapon must be reversed because the definition of "knife," as applied to him, is unconstitutionally vague. We are not persuaded.

*People v. Gross, supra,* is dispositive of this contention. There, in response to a similar vagueness challenge, the Supreme Court stated: "We believe that persons are able to evaluate whether an object is capable of inflicting cutting, stabbing, or tearing wounds so that it is capable of being used as an instrument of offensive or defensive combat, i.e., a weapon." *People v. Gross, supra,* 830 P.2d at 938.

## D.

■ A.E. also argues that the definition of "knife" is unconstitutionally overbroad as applied to him because no evidence was presented that he intended to use the object as a weapon, and therefore, his conviction for possession of a concealed weapon must be reversed. We disagree.

This overbreadth argument was also made in *People v. Gross, supra,* and that case is also dispositive here. The Supreme Court held that, to comport with the requirements of due process, the trier of fact must find not only that the instrument at issue is capable of inflicting "cutting, stabbing, or tearing wounds," but also that:

> the defendant intended to use that instrument as a weapon. Such a use need not be the exclusive use to which the defendant intended to put the object, nor is it necessary that the defendant's intent relate to a particular occasion or a specific victim. *All that is required is that one of the uses for which the defendant intended the instrument was to employ it as a weapon.*

*People v. Gross, supra,* 830 P.2d at 941 (emphasis added).

The trial court found that the "primary use" of the weapon at issue here is "to inflict cutting, stabbing, or tearing wounds." The trial court was entitled to infer from the appearance of the weapon its primary use. *See People v. Gross, supra.* Accordingly, it could disregard contradictory testimony that it found less credible. *See People v. Quick,* 713 P.2d 1282 (Colo.1986). We accept the trial court's finding because there is evidence in the record, notably the weapon's design, to support it. *See People v. Vigil,* 955 P.2d 589 (Colo.App.1997).

When the primary purpose of an instrument is for use as a weapon, the prosecution need not offer independent proof that the defendant so intended to employ it. *See People v. Gross, supra* (a screwdriver is not such an instrument because its primary use is as a tool, but a revolver is such an instrument because its primary use is as a weapon).

Accordingly, the evidence presented at trial adequately established that A.E. possessed the weapon with the intent to so use it. Thus, the definition of a "knife" found in § 18–12–101(1)(f), C.R.S.1998, is not overbroad as applied to him, and there is no constitutional infirmity in his conviction for possession of a concealed weapon. *See People v. Gross, supra.*

The judgment is affirmed.

Judge CRISWELL and Judge KAPELKE concur.