Rockingham
No. 98-208

## THE STATE OF NEW HAMPSHIRE

v.

## WALTER BECKERT

November 18, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, attorney, on the brief and orally), for the State.

*John P. Newman*, assistant appellate defender, of Concord, for the defendant.

BRODERICK, J. The defendant, Walter Beckert, was charged as a felon in possession of a dangerous weapon under RSA 159:3 (1994). The Superior Court (*Gray*, J.) dismissed the charge on the basis that: (1) a hunting knife did not constitute a "dangerous weapon" within the meaning of the statute; and (2) the statute was unconstitutionally vague. We reverse.

Viewed in the light most favorable to the State, the record reflects that on January 9, 1997, Portsmouth police responded to a fight in the downtown area. They recognized the defendant, who was a bystander, determined that he was wanted on an outstanding warrant, and placed him under arrest. While being handcuffed, the defendant attempted to reach underneath his jacket in an effort to access a concealed, six-inch hunting knife encased in a sheath.

On appeal, the State argues that the trial court erred in ruling, as a matter of law, that the defendant's hunting knife was not a dangerous weapon under RSA 159:3. The State asserts that whether the defendant's hunting knife qualifies as a "dangerous weapon" under the statute turns on its capacity to cause serious injury or death and its use or intended use for such purposes.

The defendant counters that the "plain meaning" of "other dangerous weapon" under the statute excludes his six-inch hunting knife, and that the doctrine of *ejusdem generis* compels a finding that the knife is not a "dangerous weapon" because it is not a weapon of combat.

▮ This court is the final arbiter of the intent of the legislature as expressed in the words of a statute. *See State v. Telles*, 139 N.H.

344, 346, 653 A.2d 554, 556 (1995). Where a statute fails to define a disputed term, we assign its plain and ordinary meaning. *See id.* Moreover, we interpret the plain meaning of a statute to effectuate its underlying purpose. *See Nashua School Dist. v. State,* 140 N.H. 457, 458, 667 A.2d 1036, 1038 (1995).

RSA 159:3 provides that a convicted felon is guilty of a felony if he "owns or has in his possession . . . a stiletto . . . pistol cane, blackjack, dagger, dirk-knife, or any other dangerous weapon." RSA 159:3, I(a). Because "dangerous weapon" is not specifically defined in the statute, we look to its common meaning. The phrase "dangerous weapon" is defined to mean a weapon

> by the use of which a serious or fatal wound or injury may probably or possibly be inflicted. In [the] context of criminal possession of a weapon[, a dangerous weapon] can be any article which, in circumstances in which it is used, attempted . . . or threatened to be used, is readily capable of causing death or other serious injury.

BLACK'S LAW DICTIONARY 394 (6th ed. 1990). Significantly, the weight of legal authority accords with the plain meaning of "dangerous weapon" advanced by the State. *See, e.g., United States v. Schoenborn,* 4 F.3d 1424, 1432 (7th Cir. 1993)("[t]he determination whether an object constitutes a 'dangerous weapon' turns not on the object's latent capability alone, but also on the manner in which the object is used"); *United States v. Bey,* 667 F.2d 7, 11 (5th Cir. 1982). Moreover, the plain meaning of "dangerous weapon" is entirely consistent with the apparent purpose underlying RSA 159:3, which is to protect the public from felons who would possess or have under their control instruments capable of causing serious injury or death. *Cf. People v. Bailey,* 160 N.W. 380, 382 (Mich. App. Ct. 1968). If we are to effectuate the statute's purpose, we cannot read section 3 to permit felons to carry a cleaver or a razor, but not a stiletto, in public. *See Nashua School Dist.,* 140 N.H. at 458, 667 A.2d at 1038.

An interpretation of "dangerous weapon" broad enough to include the defendant's hunting knife is also demonstrated by other provisions of chapter 159. RSA 159:16 (1994), unlike 159:3, prohibits the sale or possession by any person of "[a] stiletto, switch knife, dagger, dirk-knife, blackjack, slung shot or metallic knuckles," but excludes the catch-all phrase "or any other dangerous weapon." Thus, section 16 prohibits all citizens from possessing per se dangerous instruments. By contrast, in enacting section 3, the legislature intended to prohibit convicted felons from possessing not only the per se dangerous instruments enumerated in the statute,

but also "other dangerous weapons." Section 3, therefore, effects the reasonable goal of preventing felons from possessing a broader range of actual or potential weapons than the general public.

◼ Accordingly, where a felon is charged with possession of a "dangerous weapon" that is not specifically enumerated in RSA 159:3, the test of whether the instrument is included in the statute's reach is whether it has the capacity to cause serious injury or death as allegedly used or intended to be used. *See People v. Brown*, 277 N.W.2d 155, 158 (Mich. 1979). Factors relevant to this determination include the nature of the instrument itself, the circumstances and manner of its possession, and its actual or intended use, and possible peaceful purposes justifying its possession and use. *See State v. Baldwin*, 571 S.W.2d 236, 241 (Mo. 1978).

◼ In this case, the facts, viewed in the light most favorable to the State, suggest that the defendant intended to use his hunting knife to threaten or injure. It cannot be questioned that a six inch hunting knife had the capacity to cause serious injury or death. *See* RSA 625:11, V (1996). The defendant was apprehended with a concealed knife in his possession in a crowded downtown area in the vicinity of a fight, and attempted to draw the knife when arrested. Under these circumstances, a reasonable jury could find that the knife constituted a "dangerous weapon" because of the serious and immediate danger it posed to the police and to members of the public. *See Matter of Jamie D.*, 453 N.E.2d 515, 517 (N.Y. 1983) (kitchen knife considered a "dangerous knife" because "the circumstances of its possession . . . may permit a finding that . . . it was essentially a weapon rather than a utensil"); *Baldwin*, 571 S.W.2d at 242 (steak knife considered "deadly weapon" based on circumstances of possession).

The defendant argues that the doctrine of *ejusdem generis* should be applied when interpreting the meaning of "other dangerous weapon" under the statute. This doctrine provides that

> where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same kind or class as those specifically mentioned.

BLACK'S LAW DICTIONARY 517 (6th ed. 1990); *accord State v. Wilson*, 140 N.H. 44, 45, 662 A.2d 954, 955 (1995). The defendant contends that the specific weapons enumerated in RSA 159:3

represent instruments of combat per se and that the catch-all category of "other dangerous weapon" must be similarly limited. The defendant, however, reads the statute in a vacuum and casts it too narrowly. The purpose underlying the statute cannot be overlooked when interpreting its intended meaning. RSA 159:3 was expressly intended to protect the public from felons who would possess instruments capable of causing serious injury or death. While combat weapons clearly fit this category, they do not exhaust the list of all potential instruments capable of causing such harm. Given the purpose of RSA 159:3, it does no disservice to the doctrine of *ejusdem generis* to interpret "other dangerous weapon" as we have done. To construe it as limited to weapons of combat would require us to read the statute with blinders. We refuse to do so. Indeed,

> [i]t is well established that the rule of *ejusdem generis* is neither final nor exclusive and is always subject to the qualification that general words will not be used in a restricted sense if the act as a whole indicates a different legislative purpose in view of the objectives to be attained. As a general rule the use of Latin phrases to solve problems of statutory construction has not been a marked success. . . . The crux of the matter is that the rule of *ejusdem generis* is only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intention.

*State v. Small*, 99 N.H. 349, 351, 111 A.2d 201, 202 (1955)(citation omitted).

██ Finally, the defendant argues that RSA 159:3 is unconstitutionally vague. The standard employed by this court and the United States Supreme Court in gauging whether a statute is unconstitutionally vague is "whether men of common intelligence must necessarily guess at [its] meaning and differ as to its application." *State v. Pike*, 128 N.H. 447, 449, 514 A.2d 1279, 1280 (1986); *see State v. Parker*, 109 N.H. 491, 492, 256 A.2d 159, 160 (1969). As our analysis of RSA 159:3 reveals, a fair reading of the statute informed by its purpose places a defendant on notice that possession of a six-inch hunting knife under the circumstances alleged in this case could constitute a "dangerous weapon." Accordingly, the term "dangerous weapon" is not unconstitutionally vague. *See State v. Piper*, 117 N.H. 64, 66, 369 A.2d 199, 201 (1977)(holding that phrase "dangerous weapons" is not unconstitutionally vague when applied

to a defendant who was arrested in possession of a four-inch dirk knife).

*Reversed and remanded.*

All concurred.