A.P.E., a Juvenile, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 99SC392.

Supreme Court of Colorado,
En Banc.

March 26, 2001.

―――――――

David Kaplan, Colorado State Public Defender, Daniel Gil Katz, Deputy State Public Defender, Golden, CO, Attorneys for Petitioner.

Ken Salazar, Attorney General, Robert Mark Russel, Assistant Solicitor General, Appellate Division, Criminal Justice Section, Jane G. Ebisch, Special Assistant Attorney General, Appellate Division, Denver, CO, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this case we consider the application of the concealed weapons statute to a person carrying a knife with a blade less than three and one-half inches in length. The blade length is important because the concealed weapons statute distinguishes on that basis. A knife with a longer blade is defined as a weapon but a knife with a shorter blade is a weapon only if it comes within the catchall definition of the statute.

We conclude that, to sustain a conviction under the concealed weapons statute in a case involving a knife with a blade less than three and one-half inches long, the prosecution must prove that the defendant used or intended to use the knife as a weapon. This determination of intent must be based on all the relevant circumstances including the defendant's words and actions as well as the characteristics of the knife. Because neither the trial court nor the court of appeals made a determination of intent based on all the relevant circumstances, the defendant is entitled to a new trial on his concealed weapon charge.

## I.

This case was tried to the court and only two witnesses testified at trial. The arresting officer testified for the prosecution, and an expert on knives testified for the defense. The evidence showed that on the afternoon of May 24, 1997, a police officer on regular patrol observed the defendant, A.P.E., a fourteen year old boy, and a companion beside a busy street. As the officer drove past the two juveniles, he saw that A.P.E. was staring at the passing traffic, mouthing words that the officer could not hear, and gesturing with his arms in an up and down motion, alternately grabbing his crotch and raising his arms. In order to investigate, the officer made a U-turn and stopped A.P.E. as he was crossing the street. A.P.E.'s companion left the scene when he saw the police car approaching. A.P.E., however, stopped and conversed with the police officer.

Due to heavy traffic, the police officer found it difficult to talk with A.P.E. and decided to continue the conversation inside the squad car. Before allowing A.P.E. into the squad car the officer performed a pat down search on A.P.E. for safety reasons. While performing the pat down search, the officer asked A.P.E. if he had any weapons on his person. In response, A.P.E. told the officer that he was carrying a knife. Relying on this information, the officer retrieved a knife from a scabbard on A.P.E.'s belt.

The knife the officer retrieved from A.P.E. was a T-handled push knife (see Figure 1). The handle had finger grooves similar to metallic knuckles and was attached to a knife-blade that was less than three and one-half inches in length. Four other small metal points were attached to the handle but they were not sharpened as knife blades.

## FIGURE 1

5.7 Inches

After finding the push knife, the police officer placed A.P.E. under arrest. A.P.E. was charged with one count of harassment pursuant to section 18–9–111, 6 C.R.S. (2000),[1] one count of possession of an illegal weapon pursuant to section 18–12–102, 6 C.R.S. (2000),[2] and one count of unlawfully carrying a concealed weapon pursuant to section 18–12–105, 6 C.R.S. (2000).[3]

At trial, the defense's expert witness testified that the knife was a cheap, poor-quality knife manufactured in Asia and distributed in this country by Frost Cutlery. He further testified, and the prosecution conceded, that the blade of the knife was less than three and one-half inches in length. The expert witness explained that the knife was a derivation of an Alaskan-style knife used to skin

animals and that the handle design protects the hand of the person using the knife. The expert characterized the knife as "an ugly knife," often purchased by "Walter Mitty" types as a "decorative" or "statement" knife. He acknowledged that the knife could be used to inflict wounds and that it could be "intimidating" if it were brandished.

At his trial, A.P.E. argued that the knife fit neither the definition of "metallic knuckles," prohibited by the illegal weapons statute, nor the definition of "knife" for purposes of the concealed weapons statute. A.P.E. contended that the concealed weapons statute only expressly prohibits a person from carrying a concealed knife with a blade longer than three and one-half inches. Because the blade on his knife was less than three

1. "A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she ... [i]n a public place ... makes an obscene gesture to or at another person ...." § 18–9–111(1)(b).

2. Section 18–12–102 criminalizes the possession of dangerous or illegal weapons. "[T]he term 'illegal weapon' means a blackjack, gas gun, *metallic knuckles*, gravity knife, or switchblade knife." § 18–12–102(2) (emphasis added).

3. Section 18–12–105(1)(a) provides, among other things, that it is unlawful to carry a knife concealed on one's person. Section 18–12–101(1)(f) expressly defines a "knife" as "any dagger, dirk, knife or stiletto with a blade over three and one-half inches in length." Section 18–12–101(1)(f) also contains a catchall provision that further describes a "knife" as "any other dangerous instrument capable of inflicting cutting, stabbing or tearing wounds."

and one-half inches long, A.P.E. contended that his mere possession of this knife—without anything more—did not violate the concealed weapons statute.

The trial court rejected these arguments and convicted A.P.E. of both possessing an illegal weapon and carrying a concealed weapon.[4] The trial court agreed with A.P.E. that his knife did not meet the specific statutory definition of "knife" in the concealed weapons statute, section 18–12–101(1)(f), because its blade length was less than three and one-half inches. However, the judge found that the knife did satisfy the catchall definition of a knife because it was a dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds. In its decision, the trial court did not address whether A.P.E. intended to use the knife as a weapon.

The court of appeals affirmed A.P.E.'s conviction on both counts. *People ex rel. A.P.E.*, 988 P.2d 172, 176 (Colo.App.1999). In its decision, the court rejected A.P.E.'s claims that the evidence was insufficient to support his convictions. *Id.* at 174–75. It upheld the possession of an illegal weapon conviction, finding A.P.E. was in knowing possession of an instrument that was a combination of metallic knuckles and a knife blade. *Id.* The court also rejected A.P.E.'s argument that his conviction for carrying a concealed weapon should be set aside because it was not proven that he intended to use the knife as a weapon. *Id.* at 175–76. The court held that the defendant's intent to use this knife as a weapon was found because the knife's physical characteristics imply that its primary use is as a weapon. *Id.* at 176.

We granted certiorari to determine whether a person carrying a knife with a blade less than three and one-half inches long can be convicted of unlawfully carrying a concealed weapon when there is no evidence, other than the outward appearance of the knife, that the defendant intended to use it as a weapon.[5] The conviction for possessing an illegal weapon is not at issue here.

We hold that a defendant may not be convicted under the concealed weapons statute for carrying a knife with a blade less than three and one-half inches in length, unless the prosecution proves that the defendant intended to use the knife as a weapon. Such intent cannot be inferred solely from the appearance of the item at issue. We reach this conclusion because of the plain language of the statutes at issue and our previous case law.

## II.

### A.

██ The trial court found A.P.E. guilty of carrying a concealed weapon based on its interpretation of the catchall provision in section 18–12–101(1)(f). Construing the meaning of the catchall provision is an issue of statutory interpretation and as such is subject to de novo review. *Welch v. George*, 19 P.3d 675, 677 (Colo.2000); *Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo.1995).

### B.

Under Colorado law, a person commits a class two misdemeanor if he or she knowingly and unlawfully "carries a knife concealed on or about his or her person." § 18–12–105(1)(a), 6 C.R.S. (2000). For purposes of the concealed weapons statute, a "knife" is defined as:

> [A]ny dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or *any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds*, but does not include a hunting or fishing knife carried for sports use. The issue that a knife is a hunting or fishing knife must be raised as an affirmative defense.

§ 18–12–101(1)(f), 6 C.R.S. (2000) (emphasis added). The underscored language is the catchall provision involved in this case.

---

4. The trial court dismissed the harassment charge, holding that the People had not made out a prima facie case.

5. We granted certiorari on the following issue:

(1) Whether a defendant can be convicted of possession of a concealed weapon, a knife with a blade less than three and one-half inches, without any evidence of a specific intent to use the object as a weapon.

■ Section 18–12–101(1)(f) specifically defines daggers, dirks, knives, and stilettos with blades longer than three and one-half inches as "knives" per se. Section 18–12–105(1)(a) makes it illegal for a person to carry concealed on his or her person a dagger, dirk, knife or stiletto with a blade longer than three and one-half inches. By incorporating blade length into the definition of "knife," the General Assembly established a bright line distinction between daggers, dirks, knives, and stilettos with blades greater than three and one-half inches and those with shorter blades.

We know that the legislature made a clear policy choice to treat the two types of knives differently because prior to 1971 the concealed carrying of *any* knife was illegal. § 40–12–105(1)(a), 12 C.R.S. (1963 & Supp. 1971). Such broadly inclusive language had been construed by this court as not requiring proof of intent to use the object as a weapon. *Pueblo v. Sanders*, 151 Colo. 216, 217–18, 376 P.2d 996, 997 (1962) (construing Pueblo municipal ordinance). However, when the statute was repealed and reenacted in 1971, the new provision expressly provided that only a knife with a blade greater than three and one-half inches in length was per se illegal. Ch. 121, sec. 1, § 40–12–101, 1971 Colo. Sess. Laws 388, 481.

We must interpret the catchall provision with this legislatively created distinction in mind. Although there is no recorded legislative history of this statute, it seems clear that the legislature intended to exclude small knives from the definition of a weapon unless the person carrying it intended to use it as a weapon. We reach this conclusion because all knives of any blade length necessarily meet the catchall definition. That is, all knives are capable of causing cutting, stabbing, or tearing wounds.

■ If we were to hold that carrying any concealed knife is per se illegal we would render meaningless the statutory blade length distinction. Such a construction of the catchall phrase is contrary to our most basic rules of statutory interpretation. *Avi-Comm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1031 (Colo.1998) ("A statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts."). Therefore, in accordance with our rules of statutory interpretation, we conclude that carrying a concealed dagger, dirk, knife or stiletto with a blade less than three and one-half inches is not by itself a violation of the concealed weapons statute.

### C.

The question is under what circumstances the possession of a knife with a small blade may violate the concealed weapons statute. To answer that question, we turn to the relevant case law. .

We analyzed the catchall provision of section 18–12–101 in another context in *People v. Gross*, 830 P.2d 933 (Colo.1992). *Gross* involved section 18–12–108, 8B C.R.S. (1986), which prohibited the possession of weapons by previous offenders, i.e., persons convicted of felony crimes. Like the concealed weapons statute, the previous offender statute also incorporated section 18–12–101's definition of a "weapon."

Prior to *Gross*, we held that a previous offender unlawfully possesses a weapon in violation of section 18–12–108 if the offender knowingly possesses an instrument that is expressly defined as a weapon in section 18–12–101. *See People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979). However, in *Gross* we held that if the alleged weapon in the previous offender's possession is not expressly defined as a weapon in section 18–12–101, but does meet the catchall definition of a "knife," the previous offender can be convicted of unlawful possession of a weapon only if the prosecution proves that he or she intended to use the instrument as a weapon. *Gross*, 830 P.2d at 941.

In *Gross*, the defendant, a prior offender, was charged with possessing a "knife" in violation of section 18–12–108, 8B C.R.S. (1986). *Gross*, 830 P.2d at 935. The charge stemmed from an incident in which the defendant menacingly approached a police officer with a sixteen-inch screwdriver. *Id.* The defendant later admitted that he intended to use the screwdriver to stab the officer. *Id.* The prosecution alleged that the screwdriver

was a "knife" under the catchall provision of section 18–12–101(1)(f) because it was a dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds. *Id.* The trial court dismissed the charge, finding that the catchall definition of "knife" in section 18–12–101(1)(f) was vague and overbroad. *Id.* at 935–36.

On appeal, the People argued that the definition of "knife" in section 18–12–101(1)(f) is not unconstitutionally vague and overbroad. *Id.* at 936. We agreed that, properly construed, the catchall definition met due process requirements. We reversed the trial court's order and upheld the constitutionality of section 18–12–101(1)(f) as applied through section 18–12–108, stating:

> [A]n essential element of the crime of possession of "any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds" by a convicted felon *is the intent to use the instrument as a weapon.* The presence of such a *specific intent* element diminishes the susceptibility of a statute to a challenge for vagueness, for in such circumstances "the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law."

*Id.* at 938 (citations omitted; emphasis added).

In *Gross,* we recognized that the term " 'knife' ... embraces many objects that have innocent and legitimate uses even though they may also be employed as weapons." *Id.* at 940–41. We noted that the wide variety of objects capable of inflicting cutting, stabbing, or tearing wounds could make the catchall provision unconstitutionally overbroad unless its reach was limited by requiring proof that the defendant actually intended to use a particular object as a weapon. *Id.* at 941. We further observed that the legislature focussed on the defendant's intended use of a knife and tried to ensure that innocent uses of knives, such as for hunting and fishing, were protected. *Id.* By applying the intended use element to the crime of carrying a concealed weapon, we gave effect to the legislative distinction and gave an enforceable interpretation of the concealed weapons statute.

 Interpreting a concealed weapons statute requires the balancing of two important concerns. First, a concealed weapons statute is designed to protect the safety of the public as well as the safety of the person carrying the weapon. *Anderson v. State,* 328 Md. 426, 614 A.2d 963, 965 (1992); W.M. Moldoff, Annotation, *Offense of Carrying Concealed Weapon as Affected by Manner of Carrying or Place of Concealment,* 43 A.L.R.2d 492 (1955). Second, penal statutes such as the concealed weapons statute must be reasonably definite to give fair warning of proscribed conduct and to ensure that statutory standards are specific, thus preventing arbitrary and discriminatory application. § 18–1–102(1)(a), (c), 6 C.R.S. (2000) (stating that the Colorado Criminal Code is intended to give all persons fair warning of prohibited conduct and to prevent the arbitrary treatment of persons accused of offenses); *see also Anderson,* 614 A.2d at 965. Both concerns are appropriately balanced by requiring a showing that a person intended to use an instrument as a weapon in order to convict that person of unlawfully carrying an instrument that can cause cutting, stabbing or tearing wounds. As we emphasized in *Gross,* "[s]uch a use need not be the exclusive use to which the defendant intended to put the object, nor is it necessary that the defendant's intent relate to a particular occasion or a specific victim." *Gross,* 830 P.2d at 941. The test is not whether the defendant actually used an instrument as a weapon but whether at least one of the reasons the defendant carried the instrument was to use it as a weapon. Thus, evidence that a defendant habitually carried the instrument for use as a weapon is clearly relevant and may satisfy the test in a given case. The intent requirement, as established in *Gross,* does not diminish the protection provided to the public by the concealed weapons statute. Furthermore, the intent requirement gives fair warning of proscribed conduct and prevents the possibility of arbitrary and discriminatory application of our concealed weapons statute.

### D.

 The court of appeals held, and the People now argue, that intent to use an

object as a weapon is established by the object's appearance alone, if the appearance demonstrates that its primary use is as a weapon. *A.P.E.*, 988 P.2d at 176. This test, however, does not follow *Gross* and is contrary to the plain language of the concealed weapons statute.[6] The inherent characteristics of daggers, dirks, and stilettos suggest that their primary use is as a weapon; for example, a "dagger" is defined as "a short knife used for stabbing."[7] *Webster's Third New International Dictionary* 570 (1993). Therefore, by definition, a dagger's primary use is as a weapon. However, the plain language of section 18–12–101 exempts a dagger with a blade less three and one-half inches long from being automatically considered a "knife," and thus a proscribed weapon.

While we agree that the appearance of an object may be relevant to determining the defendant's intent, it is not dispositive. A test based solely on an object's appearance is indefinite and subjective, requiring a case-by-case determination of whether an instrument's primary purpose is as a weapon. The appearance of a short-bladed knife is inherently ambiguous, especially one with a blade length close to the statutorily proscribed three and one-half inches. As the defense expert testified in this case, A.P.E.'s knife is "ugly" and could be used to intimidate another person. In other words, it can be used as a weapon. But it is also a collectible or decorative object that could be treasured by a collector or a fourteen-year-old boy like A.P.E. The court of appeals' primary purpose test does not distinguish between a person who carries a knife as a weapon and one who is simply taking the knife from one place to

another. Furthermore, the test does not give fair warning of what is prohibited conduct, and is likely to lead to arbitrary enforcement. For these reasons, we determine that the mere appearance of a knife with a blade less than three and one-half inches cannot be enough to sustain a conviction.

### E.

We have found no statutes in other jurisdictions with our exception for short-bladed knives. However, jurisdictions with otherwise similar concealed weapons statutes have found that intent to use an object as a weapon is a necessary element of a concealed weapon conviction when the object at issue is not per se a "weapon" according to the relevant statute. *Anderson v. State*, 328 Md. 426, 614 A.2d 963, 968 (1992) (finding that the concealed weapons statute "is not violated simply because the instrument can be used to inflict serious or deadly harm"); *People v. Lynn*, 459 Mich. 53, 586 N.W.2d 534 (1998) ("The fact that a pointed instrument, such as a machete, has a great potential as a dangerous weapon does not render it a dangerous weapon per se."); *see also Mihas v. United States*, 618 A.2d 197, 201 (D.C.1992); *State v. Choat*, 178 W.Va. 607, 363 S.E.2d 493, 501 (1987); *State v. Blea*, 100 N.M. 237, 668 P.2d 1114, 1116 (Ct.App.1983).[8]

While some courts in other jurisdictions, applying their concealed weapons statutes, have held that intent is not a necessary element of a concealed weapon charge, we do not find these cases persuasive. For example, the California Supreme Court held that

---

**6.** The court of appeals based its test on language in *Gross* which states that to show intent "[a]ll that is required is that one of the uses for which the defendant intended the instrument was to employ it as a weapon." *A.P.E.*, 988 P.2d at 176 (quoting *Gross*, 830 P.2d at 941). However, as discussed above, the court of appeals' interpretation of *Gross* is contrary to the plain language of the concealed weapons statute because it would make it per se illegal to carry a dagger, dirk, or stiletto whatever the length of the blade. Furthermore, we are not convinced that an instrument's appearance, without more, can be conclusive of its owner's intent.

**7.** As commonly understood, a "dirk" is "a long straight-bladed dagger," *Webster's Third New In-*

ternational Dictionary 642 (1993), and a "stiletto" is "a slender dagger with a blade thick in proportion to its breadth," *id.* at 2243.

**8.** With regard to the intent requirement, other jurisdictions have held that there are many factors to be considered in determining whether a person intends to use an instrument as a weapon including: (1) the characteristics of the instrument; (2) the circumstances under which it is carried, for example, the time and place; (3) the person's actions regarding the instrument; and (4) the place of concealment. *Anderson*, 614 A.2d at 971 (citations omitted); *Choat*, 363 S.E.2d at 501–02.

intent is not an element of the crime of carrying a concealed dirk or dagger. *People v. Rubalcava,* 23 Cal.4th 322, 96 Cal.Rptr.2d 735, 1 P.3d 52, 58 (2000). The statute at issue in that case broadly describes a dirk or dagger as any object capable of "ready use as a stabbing weapon." *Id.* 96 Cal.Rptr.2d 735, 1 P.3d at 56. The court reached its decision because the statute expressly prohibited consideration of the defendant's intent.[9] *Id.* 96 Cal.Rptr.2d 735, 1 P.3d at 58. The court noted, however, that its decision "may criminalize seemingly innocent conduct" and "may invite arbitrary and discriminatory enforcement." *Id.* 96 Cal.Rptr.2d 735, 1 P.3d at 59. Because our statute has no comparable language regarding intent, the reasoning of *Rubalcava* does not apply in this case.

In *State v. Vermilya,* the North Dakota Supreme Court held that intent to use an instrument as a weapon may be inferred when an instrument is "peculiarly suitable for use as a weapon." *State v. Vermilya,* 423 N.W.2d 153, 155 (N.D.1988). As discussed, in section II.D. *supra,* all daggers, dirks, and stilettos are particularly suitable for use as a weapon. Therefore, as with the court of appeals' test, we do not find that the "peculiarly suitable for use as a weapon" test effectuates the distinction between daggers, dirks, and stilettos with different blade lengths contained in the plain language of our statute. Thus, we decline to adopt this test.

The Iowa Supreme Court in *State v. Watts* determined that items such as hand grenades or bombs have characteristics that make them per se deadly and therefore dangerous weapons.[10] *State v. Watts,* 223 N.W.2d 234, 238 (Iowa 1974) (citations omitted). However, the court went on to find that the trier of fact must determine that the defendant used or *intended* to use a *knife* as a weapon in order to convict him for carrying a ten and one-half inch knife concealed on his person. *See Watts,* 223 N.W.2d at 237–38. There-

fore, while *Watts* stands for the proposition that some extremely dangerous objects may be treated as weapons per se, it supports our holding that intent is a necessary element in cases involving knives and other sharp instruments such as the knife at issue here.

In conclusion, we agree with jurisdictions that have held that the characteristics of an instrument may be an important factor in determining the intended purpose of an instrument. However, in light of the language of our concealed weapons statute and our established precedent, we hold that a knife's design does not by itself prove that the person carrying it intended to use it as a weapon.

### III.

We conclude that A.P.E. could not be convicted of carrying a concealed weapon without the prosecution proving that he intended to use this short-bladed knife as a weapon. Therefore, we reverse the court of appeals' decision and remand this case with directions to return it to the trial court for proceedings consistent with this opinion.

KOURLIS, J., dissents, and BENDER and COATS, JJ., join in the dissent.

Justice KOURLIS dissenting:

The majority holds that the prosecution must prove that the defendant intended to use the knife he was concealing in his pants as a weapon in order to be convicted for unlawfully carrying a concealed weapon. I respectfully dissent.

### I.

The statute at issue is section 18–12–101(1)(f), 6 C.R.S. (2000), defining a knife as "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length, or any other dangerous instrument capable of inflicting cutting, stabbing, or

---

9. The court in *Rubalcava* noted that when the California legislature enacted the concealed weapons statute it expressly stated that "no intent for unlawful use would be required for violations of the prohibition on the concealed possession upon the person of an otherwise lawful dirk

or dagger." *Rubalcava,* 96 Cal.Rptr.2d 735, 1 P.3d at 58 (citations omitted).

10. We do not address at this time whether extremely dangerous objects may be treated as weapons per se.

tearing wounds." The majority reads the statute to mean that, by specifically referring to blades longer than three and one-half inches, the General Assembly intended to exclude shorter knives from the definition of a weapon unless the person carrying it intended to use it as a weapon. Specifically, the majority concludes that all knives are capable of causing cutting, stabbing, or tearing wounds and finding any concealed knife to be per se illegal renders meaningless the General Assembly's statutory blade length distinction. Maj. op. at 1183.

I disagree. First, I would defer to the plain language of the statute and conclude that a "knife" is any "dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds," and that such determination is a question of fact properly resolved by the trial court. Here, the trial court did make that finding and I would defer to it.

Second, I would not superimpose upon the statute any requirement of intent to use the item as a weapon. The majority takes that element from *People v. Gross*, 830 P.2d 933 (Colo.1992), which I believe has been limited if not overruled in this context by our intervening case law.

### A.

Under Colorado law, a person commits a class two misdemeanor if he knowingly and unlawfully "carries a knife concealed on or about his person." § 18–12–105(1)(a), 6 C.R.S. (2000). The trial judge found that the weapon concealed on A.P.E.'s person was not a knife for purposes of the concealed weapons statute because the blade was less than three and one-half inches. The judge did find, however, that the object fell within the ambit of the statute as "any other dangerous instrument" that could inflict cutting, stabbing, or tearing wounds. *See* § 18–12–101(1)(f).

Whether the object possessed by A.P.E. constituted a knife or any other dangerous instrument was a question of fact to be determined by the trial judge. *J.D.C. v. Dist. Court,* 910 P.2d 684, 688 (Colo.1996) (holding that the issue of whether an automobile was a "deadly weapon" pursuant to section 18–1–

901(3)(e) was a question for the trier of fact); *Hutton v. People,* 156 Colo. 334, 338, 398 P.2d 973, 975 (1965) (holding that whether a weapon qualifies as a "dangerous weapon" for purposes of the aggravated assault statute was a question for the jury as the trier of fact). This court consistently defers to trial courts on such questions of fact and overrules a trial court's findings only upon a showing that the record contained no competent evidence to support the trier of fact's determination. *People v. D.F.,* 933 P.2d 9, 14 (Colo.1997).

I view the language "any other dangerous instrument capable of inflicting cutting, stabbing or tearing wounds" to be plain and unambiguous. The language on its face indicates that a variety of weapons other than daggers, dirks, knives or stilettos with blades over three and one-half inches may violate the statute. This comports with the general statutory interpretation of the word "any," which means "all." *Austin v. Weld County,* 702 P.2d 293, 294 (Colo.App.1985). Additionally, under the principle of ejusdem generis, when a general term follows a specific one, the general term encompasses those items of the same general nature or class as those enumerated. *Lyman v. Town of Bow Mar,* 188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975). Therefore, the phrase "any other dangerous instrument" should be read inclusively to cover a range of weapons other than those specifically enumerated in the statute, as long as the weapons have the same characteristics as daggers and knives.

Concealed weapons statutes are designed to protect the safety of the public as well as the safety of the person carrying the weapon. *See Anderson v. State,* 328 Md. 426, 614 A.2d 963, 965 (1992). To further the objective of preserving public safety, the General Assembly may prohibit the concealed carrying of objects other than those commonly understood to be weapons. This court previously has stated that "[t]here is a need for some generality in describing weapons that can be wielded as knives.... [T]he articles that may be employed as weapons to inflict cutting, stabbing, or tearing wounds are limited only by the user's imagination and ingenuity." *Gross,* 830 P.2d at 938 (internal quotations

omitted). Therefore, it would be impossible for the General Assembly to draft a statute with absolute precision. *See, e.g., People v. Revello,* 735 P.2d 487, 491 (Colo.1987) (stating that statutes need not be drafted with mathematical certainty).

This understanding of the statute is consistent with the factual nature of the issue. As the New Jersey Supreme Court noted, "[i]n using general language, the legislature intended to allow juries and judges to define, through the use of their own community standards and through an evaluation of the relevant facts and circumstances, what constitutes manifestly inappropriate possession of an object in each individual case." *State v. Kelly,* 118 N.J. 370, 571 A.2d 1286, 1293 (1990).

Other state courts have read weapons statutes with similar language broadly. *See State v. Holloway,* 11 Conn.App. 665, 528 A.2d 1176, 1178 (1987) (holding that a dangerous weapon statute should be broadly defined "to include, within its purview, the carrying of any dangerous weapon whether or not specifically listed"); *Dorsey v. State,* 212 Ga.App. 830, 442 S.E.2d 922, 923 (1994) (construing "any other dangerous or deadly weapon" as a catch-all phrase); *State v. Beckert,* 144 N.H. 315, 741 A.2d 63, 66 (1999) (stating that in light of the purpose of a statute prohibiting convicted felons of possessing weapons, the statute should not be read as an exhaustive list of the instruments capable of causing harm); *Kelly,* 571 A.2d at 1292 (finding that a statute should be read inclusively because "a statutory list would potentially fail to filter out makeshift weapons or objects that may be used as weapons"); *State v. Vermilya,* 423 N.W.2d 153, 155 (N.D.1988) (finding that even a concealed weapons statute without a catch-all phrase such as "any other dangerous instrument" should be read to include weapons other than those specifically named).

After reviewing the record, the court of appeals found evidentiary support for the trial judge's factual finding that the weapon at issue was capable of inflicting cutting, stabbing or tearing wounds. *People v. A.P.E.,* 988 P.2d 172, 175 (Colo.App.1999). I agree that the trial court's finding was fully supported by evidence in the record. The trial court had the opportunity during the trial to view the weapon and assess its characteristics. Although it may not fit the definition of a knife because the blade measures less than three and one-half inches, both the blade and smaller prongs are inherently capable of inflicting cutting, stabbing, or tearing wounds.[1] The trial judge also heard testimony from the arresting officer and an expert witness regarding the nature of the weapon. According to the defense's own expert witness, use of the weapon for everyday purposes such as hunting would be awkward due to the brass knuckles design. Therefore, I have no difficulty in concluding that the evidence was sufficient to support the trial judge's conclusion that the weapon, a combination of brass knuckles and a blade, falls squarely within the "any other dangerous instrument" clause of the concealed weapons statute. Because the trial judge's findings were not clearly erroneous, I would affirm his determination.

II.

A.P.E. contends, and the majority agrees, that when a defendant is charged with concealment of a dangerous instrument under the statute, a necessary implied element of such a charge is that the defendant intended to use the instrument as a weapon. The majority reaches that conclusion apparently to avoid an overbroad application of the weapon definition statute that would potentially include objects with innocent purposes, in reliance upon *Gross. See* 830 P.2d at 941.

In *Gross,* this court addressed a challenge to section 18–12–101(1)(f)'s definition of "any other dangerous instrument" as unconstitutionally vague and overbroad. *Id.* at 936.

---

1. In this case, the trial court determined that the weapon at issue was not an ordinary knife, but a different kind of weapon consisting of both brass knuckles and a blade. I find that the trial court's characterization of the weapon was supported by evidence in the record. Therefore, I do not reach the question of whether an ordinary knife with a blade of less than three and one-half inches could nonetheless fall within the reach of the concealed weapons statute as "any other dangerous object."

The defendant was charged with possession of a weapon, characterized as a screwdriver. The court concluded that the statute was not vague, because "persons are able to evaluate whether an object is capable of inflicting cutting, stabbing, or tearing wounds so that it is capable of being used as an instrument of offensive or defensive combat, i.e., a weapon." *Id.* at 938. As to the overbreadth challenge, the court expressed concern that the statute as worded could include objects that have innocent and legitimate uses even though they could also be employed as weapons. *Id.* at 941. In order to avoid such an overbroad application of the statute, the court held that when a defendant is charged with possessing a weapon, the State must prove that the defendant understood that the object possessed was a weapon. *Id.* Therefore, the court engrafted onto the statute an element of intent, beyond knowing possession. I take issue with *Gross* and its application to this case on two bases.

2. Defendant claims that if this court declines to require intent to possess the object as a weapon, then possession of a concealed weapon in these circumstances requires no mens rea and is effectively a strict liability crime. Defendant argues that strict liability crimes generally are public welfare offenses carrying minimal penalties, while violation of the concealed weapons statute may carry significant jail time. I would reject Defendant's argument that my view of the case creates a strict liability crime because the statute expressly includes the mens rea requirement that the defendant "knowingly and unlawfully possess the weapon." § 18–12–105.

3. Other states have followed a similar rationale, distinguishing circumstances dealing with an object that has an everyday use from objects that are inherently weaponry. *See Robinson v. State,* 547 So.2d 321, 323 (Fla.Dist.Ct.App.1989) (finding that a razor blade has a constructive social use and was not designed with the purpose of causing great bodily harm, but that it may become a weapon by its use or threatened use); *Dorsey,* 442 S.E.2d at 923 (holding that a scalpel is not designed as a dangerous weapon, but it may become one under certain circumstances); *State v. Watts,* 223 N.W.2d 234, 239 (Iowa 1974) (stating that intent was an essential part of the charge when a kitchen knife fell within the scope of a weapons statute as an "other offensive or dangerous weapon"); *Anderson,* 614 A.2d at 968 (holding that intent was required to reach the conclusion that a utility knife was a concealed weapon); *State v. Baldwin,* 571 S.W.2d 236, 241 (Mo.1978) (stating that the manner in which a defendant used or carried a weapon for use

**A.**

First, I believe that *Gross* is limited to a circumstance in which the object at issue does not evidence the characteristics of a weapon, unlike the object here. When the object on its face evidences the inherent characteristics of a weapon, no additional intent need be proven.[2] Even under *Gross,* only when the object is something used primarily for everyday, lawful purposes does the State need to prove intent to use the object as a weapon.[3] This distinction left the court's previous holding in *People v. Tenorio* intact. *See* 197 Colo. 137, 144–45, 590 P.2d 952, 957 (1979). In *Tenorio,* the defendant possessed a gun in violation of the statute prohibiting possession of weapons by previously convicted felons. *Id.* at 139, 590 P.2d at 953. This court held that the jury need not be instructed that the defendant intentionally possessed the weapon because the statute expressly required only knowing pos-

separated the possession of ordinary and lawful utensils, such as a steak knife, from unlawful weapons); *Knight v. State,* 993 P.2d 67, 73 (Nev. 2000) (finding that under the circumstances, the defendant intended to carry a steak knife as a weapon); *Coleman v. State,* 790 S.W.2d 369, 372 (Tex.Crim.App.1990) (holding that intent is required to conclude that a tire knocker is an unlawful club).

Other jurisdictions similarly have dispensed with the intent requirement in situations where the object at issue is obviously a weapon. *See People v. Rubalcava,* 23 Cal.4th 322, 96 Cal. Rptr.2d 735, 1 P.3d 52, 56 (2000) (holding that the State need not prove intent to use a knife with a three inch blade as a weapon as part of the charge of carrying a concealed weapon); *Watts,* 223 N.W.2d at 238 (stating that "some weapons carry their dangerous character because so designed and they are per se, deadly, such as hand grenades or bombs"); *Vermilya,* 423 N.W.2d at 155 (holding that the State need not prove that the defendant intended to use a modified razor as a weapon when the razor was apparently modified to be a weapon). In *Vermilya,* the defendant possessed a straight razor that had been modified so that the blade was partially serrated and had a honed edge. *See* 423 N.W.2d at 155. The court found that the modification made the blade unsuitable for shaving and made the blade "peculiarly suitable for use as a weapon, from which its intended use as a weapon is fairly inferable." *Id.* The court thus concluded that the State need not prove that it was the defendant's purpose to use the razor as a weapon. *See id.*

session of the weapon. *Id.* at 144, 590 P.2d at 957.

Here, the trial court determined that the object found on A.P.E. was primarily intended as an instrument for inflicting cutting, stabbing, or tearing wounds. The court of appeals affirmed the trial court's analysis of the object's primary use. *A.P.E.,* 988 P.2d at 176. The court of appeals determined that because this object was used primarily as a weapon, the State need not prove intent as an element of the charge. *Id.*

There was sufficient evidence in this record to support the trial court's conclusion that the object found on A.P.E. was a weapon, and that it could inflict cutting, stabbing, and tearing wounds. A vast difference separates a tool with everyday uses such as a screwdriver, from this object. The object's appearance alone suggests its use as a weapon. The defendant's expert witness testified at trial that although this item could be used for skinning an animal, its design would make such an activity awkward. He also testified that the prongs on either side of the main blade served no useful or mechanical purpose, and that their primary function was intimidation. That the blade and sharp prongs were attached to a set of metal knuckles reinforces the conclusion that the object was a weapon rather than a legitimate tool. Because this object had the inherent characteristics of a weapon, the trial court correctly ruled that the State need not prove that A.P.E. intended to use the instrument as a weapon.

### B.

More importantly, I believe that *Gross* has been severely limited or overruled by our recent case law. As to a vagueness challenge, the basic inquiry is whether the "law forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *Robertson v. City & County of Denver,* 874 P.2d 325, 333 (Colo.1994). To avoid being unconstitutionally vague, statutory language must give fair warning of the prohibited conduct but still must be "sufficiently general to address the problem under varied circum-

stances and during changing times." *Id.* at 333–34. If a challenged law threatens to inhibit the exercise of constitutionally protected rights, the statute must comport with a greater degree of specificity. *Id.* at 334. In my view, section 18–12–101(1)(f) as applied through 18–12–105(1)(a) provides sufficient information to enable a person of common intelligence to determine whether the object they are carrying constitutes a weapon. *See id.* at 335. Moreover, section 18–12–105's requirement that a person "knowingly conceal" a weapon provides sufficient protection against a person being held criminally responsible for carrying a collector's item on their person.

In *People v. Hickman,* we addressed the proper scope of an overbreadth analysis. 988 P.2d 628 (Colo.1999). Specifically, we examined whether the term "threat" in section 18–8–706, 6 C.R.S. (2000), prohibiting threats against a person protected by statute was overbroad. We found that the statutory proscription of threats did not infringe upon a substantial amount of protected speech. *Id.* at 636. In that case, we limited overbreadth analysis to First Amendment claims and found that the "substantial overbreadth doctrine applies to constitutional challenges of statutes that prohibit 'pure speech' as well as 'conduct plus speech.'" *Id.* at 635. We found that a proper overbreadth inquiry requires a two prong analysis:

> First, the court must determine if the statute at issue encompasses constitutionally protected communications. Second, if the statute extends to protected communications, the court must determine whether the statute extends to a "substantial" amount of protected communication such that the statute is unconstitutional, or whether unconstitutional applications of the statute should be cured on a case-by-case basis. A court has the responsibility to apply a limiting construction or partial invalidation if doing so will preserve the constitutionality.

*Id.* at 636.

Accordingly, overbreadth analysis is inapplicable to section 18–12–101(1)(f)'s definition of "any other dangerous weapon" applied in

section 18–12–105(1)(a) because the statute prohibits only conduct, which is not protected by the First Amendment.

### III.

Therefore, I would hold that the object found on A.P.E. clearly qualifies as "any other dangerous object" for purposes of the concealed weapons statute and no additional proof of intent was necessary. I would affirm the court of appeals and uphold the verdict.

I am authorized to state that Justice BENDER and Justice COATS join in this dissent.

